# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> HP INC., <br><br> Defendant. | Case No. 2:25-cv-00069-JRG <br> Lead Case |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants. | Case No. 2:24-cv-00070-JRG |

**COUNTERCLAIM DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SAMSUNG AMENDED COUNTERCLAIMS 1–2**

Samsung's arguments in opposition are without merit and only further confirm that it has failed to plausibly allege that Wilus breached its alleged FRAND obligations. And even if Wilus's initiation of this lawsuit after *over three years* of correspondence with Samsung regarding a license could plausibly be construed as a breach, Samsung's counterclaims improperly seek remedies well beyond the four asserted patents. Counterclaims 1 and 2 should be dismissed.

### A. Samsung Has Still Failed to Identify Any Plausible FRAND Breach

Samsung asserts that it has sufficiently plead that Wilus breached its FRAND commitments by "(1) 'refusing to offer Samsung a license to the Alleged Wi-Fi 6 SEPs (including the asserted patents) on FRAND terms and conditions'; (2) 'failing to negotiate and act in good faith'; and (3) 'using injunctive relief to obtain leverage in licensing discussions for SEPs.'" Opp. at 3. But as set forth in Wilus's motion, these generalized, conclusory allegations are unsupported by specific facts. They are also directly contradicted by Samsung's own allegations that on multiple occasions, Sisvel expressed its willingness to provide Samsung with a license to Wilus's Wi-Fi 6 patents "under … FRAND … terms," and that Sisvel corresponded with Samsung regarding a license to the Wi-Fi 6 patents for *over three years*. Dkt. 48 ¶ 15.

Samsung's attempt to frame the breach question as whether "Wilus complied with its contractual obligations to the IEEE by ***offering*** a FRAND license" (Opp. at 2, emphasis added) misses the mark. To be clear, Samsung was offered a license on FRAND terms, terms similar to those accepted by the more than 30 other companies that have licensed Wilus's patents without litigation. But even accepting Samsung's allegation that certain offers to Samsung were not FRAND, Wilus's obligation under the LoA is to "***grant*** a license under reasonable rates … with reasonable terms and conditions." Dkt. 48 ¶ 23 (emphasis added). Accordingly, whether a patent owner satisfied its FRAND obligation is "*not measured by a specific offer*, be it an initial offer or an offer during a back-and-forth negotiation." *Certain Video Capable Electronic Devices,*

1

*Including Computers, Streaming Devices, Televisions, and Components and Modules Thereof*, Inv. No. 337-TA-1379, Public Version of Initial Determination (Feb. 10, 2025) at 106–07. (attached as Ex. 1). Indeed, "initial offers do not have to be on RAND terms *so long as a RAND license eventually issues*." *Id.* at 106 (emphasis added); *see also Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1038 (W.D. Wash. 2012). In other words, patent owners are not required to guarantee that all *offers* made during the negotiations leading up to the final license agreement will be agreed to be FRAND by potential licensees.[1] A patent owner breaches its FRAND obligation only where its conduct demonstrates: "(1) its unwillingness to license its patents at all, or (2) an unwillingness to license its patent on [F]RAND terms." Ex. 1 at 107; *Microsoft*, 864 F. Supp. 2d at 1031–32, 1038 (for an opening letter offer to support FRAND breach, there must be evidence establishing that the offer was so "blatantly unreasonable" as to breach duty of good faith).

Wilus's conduct *as set forth in the counterclaims* makes clear that Wilus was willing to grant Samsung a FRAND license (and still is), and that Wilus (through Sisvel) attempted to negotiate with Samsung in order to reach an agreement that both parties were happy with for years. Wilus therefore satisfied its FRAND commitments. *See id.* at 106 (finding that engaging in "years of negotiations" before filing complaint satisfied FRAND obligation).

Critically, Samsung's counterclaims do not identify a single specific instance of Wilus/Sisvel refusing to negotiate or negotiating in bad faith. And while it may be true that

---

[1] Notably, the IEEE does not provide a precise formula for calculating a "reasonable rate." Rather, the IEEE broadly defines "Reasonable Rate" as "appropriate compensation to the patent holder for the practice of an Essential Patent Claim excluding the value, if any, resulting from the inclusion of that Essential Patent Claim's technology in the IEEE Standard." IEEE Bylaws § 6.1. The IEEE also provides "optional considerations" for determining a "Reasonable Rate," which includes information relating to the value of the licensee's product(s)—information that is typically confidential and exclusively in the possession of the licensee. *See id.* Accordingly, reaching agreement on a reasonable rate generally requires back-and-forth negotiations between the patent owner and potential licensee. And FRAND disputes typically arise after the parties have reached an impasse or the patent owner refuses to negotiate, such as in the *HTC v. Ericsson* case Samsung relies on.

Samsung was not required to plead certain facts, such as that Samsung actually sought a license to Wilus's patents, that Samsung attempted to negotiate with Wilus/Sisvel, or that Wilus/Sisvel refused to negotiate the terms of the opening pool offer (*see* Opp. at 3–4), Samsung must plead at least some specific facts demonstrating that Wilus was unwilling to grant Samsung a FRAND license. All Samsung's counterclaims can muster is that "[d]uring the correspondence, Samsung attempted to understand Sisvel's licensing model." Dkt. 48 ¶ 16. This is insufficient to demonstrate an unwillingness to license the patents on FRAND terms.

The *G+ Communications* case cited by Samsung is easily distinguishable, as the plaintiff in that case "invite[d] the Court to go beyond an analysis of Samsung's pleaded allegations and to weigh evidence concerning that allegation." *G+ Commc'ns, LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00078-JRG, 2022 WL 4593080, at *2 (E.D. Tex. Sept. 29, 2022). Here, Wilus's arguments do not rely on any outside evidence. Samsung's own allegations render its breach claims implausible.

### B.  Counterclaims 1 and 2 Fail With Respect to Unasserted Patents

At set forth in the motion, the only specific conduct alleged that could remotely be construed as a breach (e.g., refusing to continue negotiations) is Wilus's filing of this lawsuit against Samsung. *See* Dkt. 48 ¶¶ 16, 53. Wilus maintains that this is still insufficient to support a breach in light of Samsung's other allegations that Wilus/Sisvel corresponded with Samsung regarding a license for over three years in an attempt to grant Samsung a FRAND license to the Wi-Fi 6 SEPs. It is unclear what more Wilus could have done to fulfill its FRAND obligations. But even if the filing of this lawsuit could be plausibly be construed as a breach, that breach would necessarily be limited to the four patents asserted in Wilus's complaint. Samsung's breach of contract counterclaim thus fails as to patents not asserted against Samsung in this action.

Samsung's assertion that it has properly plead a breach with respect to unasserted patents because Wilus "chose only to make a portfolio offer" (Opp. at 5) fails for the reasons discussed

above. There is no plausible breach with respect to Wilus's initial *offers*.

Samsung's assertion that by seeking injunctive relief on the asserted patents, Wilus gains "improper leverage" in negotiations with the unasserted patents (Opp. at 5) also fails. This alleged hypothetical "leverage" in negotiations is irrelevant to the question of whether Wilus breached its obligation to "grant [Samsung] a license under reasonable rates … with reasonable terms and conditions." Samsung can point to no conduct supporting that Wilus refused to grant Samsung a FRAND license with respect to unasserted patents.

### C. This Court Lacks Subject Matter Jurisdiction Over Foreign Patents

Samsung attempts to distinguish this Court's prior decisions holding it lacks subject matter jurisdiction over foreign patents on the ground that *Optis v. Apple* concerned a claim for declaratory judgment under foreign law, whereas "Samsung's counterclaims here are not for a declaratory judgment." Opp. at 8. But in both *Optis v. Apple* and *Optis v. Huawei*, this Court made clear that its reasoning would indeed "apply to a hypothetical breach of contract claim." *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 2:17-cv-00123-JRG-RSP, 2018 WL 3375192 (E.D. Tex. July 11, 2018). Samsung's breach claims would require this Court to determine whether Wilus satisfied its FRAND obligations with respect to all of its Wi-Fi SEPs in the patent pool, including hundreds of foreign patents. This would in turn require a determination of the FRAND rate(s) and terms for these patents—which implicates foreign patents and foreign law.

While it may be true that the court in *Optis v. Apple* allowed the claims to proceed past the pleading stage for the *U.S. patents only*, the court later declined jurisdiction over the *entire claim, including U.S. patents*, because "Optis never made an offer specifically for or limited to its U.S. Patents." *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-CV-00066-JRG, 2021 WL 2349343, at *2 (E.D. Tex. Apr. 14, 2021). There is no need to proceed further here, as Samsung alleges that "Wilus never made a direct offer to Samsung," and that the only offer "for the asserted patents was

4

through the *portfolio* offer." Opp. at 6 (emphasis added).

None of Samsung's cited cases hold that it is proper for a U.S. district court to determine a party's FRAND obligations with respect to foreign patents. *Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.*, 120 F.4th 864, 869 (Fed. Cir. 2024) is distinguishable as it concerned the issue of whether the district court properly denied a foreign-antisuit-injunction request. *Servicios Azucareros De Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794 (5th Cir. 2012) is not even a patent case. In *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, unlike here, all relevant parties/patent owners (HTC and Ericsson) "sought declarations of whether Ericsson's offers were FRAND." No. 6:18-CV-00243-JRG, 2019 WL 4734950, at *5 (E.D. Tex. May 22, 2019). Neither party raised the issue of whether it would be proper for the court to adjudicate foreign patents. Similarly, in *Lenovo (U.S.)*, *supra*, both Ericsson and Lenovo sought global cross-license to SEPs and consented to the Court's FRAND determination. 120 F.4th at 868.

In a footnote, Samsung asserts that its claims are like those in *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2018 WL 6617795 (E.D. Tex. Dec. 17, 2018). Mot. at 6 n.1. But like Samsung's other cases, the parties did not raise, and the court did not address, the propriety of adjudicating rights as to foreign patents. The main issue decided in that case was whether Ericsson had standing to sue as a third-party beneficiary. *Id.* And in *Huawei Techs. Co. v. T-Mobile US, Inc.*, the issue was whether there was an actual controversy to support declaratory judgment jurisdiction. These cases do *not* hold that a district court has jurisdiction over foreign patents. In fact, another district court just dismissed a case involving a patent licensing pool, finding that it "lacks jurisdiction" to determine FRAND terms for foreign patents. *Roku, Inc. v. Access Advance LLC*, No. 1:24-cv-13217-RGS, Dkt. 52 (D. Mass. July 22, 2025). Samsung's counterclaims thus fail to the extent they encompass foreign patents.

5

Dated:  July 23, 2025                    Respectfully submitted,

/s/ *Reza Mirzaie*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Jacob Buczko
CA State Bar No. 269408
Email: jbuczko@raklaw.com
Jonathan Ma
CA State Bar No. 312773
Email: jma@raklaw.com
Mackenzie Paladino/
NY State Bar No. 6039366
Email: mpaladino@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474

Andrea L. Fair
Email: andrea@millerfairhenry.com
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Phone: (903) 757-6400

*Attorneys for Plaintiff and Counterclaim Defendant Wilus Institute of Standards and Technology, Inc.*

6

**CERTIFICATE OF SERVICE**

    I certify that on July 23, 2025, a true and correct copy of the foregoing document was electronically filed with the Court and served on all parties of record via the Court's CM/ECF system.

                                                      /s/ *Reza Mirzaie*