# EXHIBIT 1



# Patent Trial and Appeal Board

# Consolidated Trial Practice Guide

# November 2019

# **TRIAL PRACTICE GUIDE**

## **NOVEMBER 2019 EDITION**

**Introduction** ............................................................................................................. 1

Background ............................................................................................................. 2

Statutory Requirements ......................................................................................... 3

General Overview of Proceedings ......................................................................... 5

Sequence of discovery ...................................................................................... 7

Sequence of filing responses and motions ........................................................ 8

Summary of the Rules ............................................................................................ 8

**I.  General Procedures** ........................................................................................ 8

A.  Jurisdiction and Management of the Record .................................................. 8

1.  Jurisdiction .................................................................................................. 8

2.  Prohibition on *Ex Parte* Communications. ................................................. 9

Arranging a conference call with the Board ...................................................... 9

Refusal to participate ....................................................................................... 10

B.  Counsel ........................................................................................................ 10

Need for lead and back-up counsel .................................................................. 10

Power of attorney ............................................................................................ 10

Pro hac vice ...................................................................................................... 11

C.  Electronic Filing ......................................................................................... 11

D.  Mandatory Notices ..................................................................................... 12

1. Real Party-in-Interest or Privy ............................................................... 12

2. Related Matters .................................................................................... 18

3. Identification of service information. ...................................................... 18

E. Public Availability and Confidentiality ........................................................ 19

1. Public availability ............................................................................... 19

2. Confidential information ....................................................................... 19

3. Motion to seal ..................................................................................... 19

4. Protective orders ................................................................................. 19

5. Confidential information in a petition ..................................................... 20

6. Expungement of confidential information ................................................ 21

7. Derivation .......................................................................................... 22

F. Discovery ............................................................................................. 22

1. Routine discovery ............................................................................... 23

(a) Inconsistent statements ................................................................. 23

(b) Witness expenses ......................................................................... 23

(c) Document Translation ................................................................... 24

2. Additional discovery ........................................................................... 24

3. Compelled testimony ........................................................................... 29

4. Mandatory Initial Disclosures ............................................................... 29

5. Live testimony ................................................................................... 31

6. Times and locations for witness cross-examination .................................. 32

7. E-discovery ....................................................................................... 33

G. Expert Testimony ................................................................................... 34

**II. Petitions and Motions Practice** ........................................................................................ 37

   A.  General Motions Practice Information ............................................................... 37

     1.  Motions practice ........................................................................................ 37

     2.  Prior authorization .................................................................................... 37

     3.  Word Count and Page Limits .................................................................... 38

     4.  Testimony Must Disclose Underlying Facts or Data ................................ 40

     5.  Tests and Data .......................................................................................... 41

     6.  Objective Indicia of Nonobviousness ...................................................... 41

   B.  Petition ............................................................................................................. 41

     1.  Filing date – Minimum Procedural Compliance ...................................... 41

     2.  Burden of Proof for Statutory Institution Thresholds ............................. 42

     3.  Specific Requirements for Petition ........................................................... 42

     4.  Covered Business Method/Technological Invention ................................ 42

     5.  Claim Charts ............................................................................................. 44

     6.  Claim Construction ................................................................................... 44

   C.  Patent Owner Preliminary Response ................................................................ 49

   D.  Institution of Trial ........................................................................................... 53

     1.  Statutory Threshold Standards .................................................................. 53

     2.  Considerations in Instituting a Review .................................................... 55

        35 U.S.C. §§ 314(a), 324(a) ..................................................................... 55

        Parallel Petitions Challenging the Same Patent. ...................................... 59

        35 U.S.C. § 325(d). ................................................................................... 61

     3.  Content of Decision on Whether to Institute ............................................ 64

4. Scheduling Order ................................................................................ 65

E. Initial Conference Call (One Month after Instituting Trial, if Requested) ............... 65

F. Patent Owner Response ................................................................................ 65

G. Motions to Amend ...................................................................................... 66

1. IPR, PGR, and CBM Amendments ......................................................... 66

Motion to Amend ........................................................................................ 66

Motion to Amend Practice ............................................................................ 67

Due Date .................................................................................................... 67

Evidentiary Standards .................................................................................. 67

Contents of Motion to Amend ...................................................................... 69

Claim Construction ..................................................................................... 70

2. Amendments in Derivation Proceedings .................................................. 70

3. General Practice Tips on Amendments ..................................................... 71

H. Opposition to a Motion to Amend .............................................................. 72

I. Reply to Patent Owner Response and Reply to Petitioner Opposition to a Motion to

Amend; Sur-replies ...................................................................................... 73

J. Other Motions ............................................................................................ 75

Motions for Joinder ...................................................................................... 76

K. Challenging Admissibility; Motions to Exclude; Motions to Strike ...................... 78

Motions to Exclude ...................................................................................... 79

Motions to Strike .......................................................................................... 80

L. [DELETED] ............................................................................................... 81

M.  Oral Hearing ...................................................................................... 81

    Special equipment or needs ................................................................ 83

    Demonstrative exhibits ...................................................................... 84

    Live testimony .................................................................................... 85

    No new evidence and arguments ........................................................ 85

N.  Settlement ........................................................................................... 86

O.  Final Decision ..................................................................................... 86

    Remands .............................................................................................. 87

P.  Rehearing Requests ............................................................................. 90

**APPENDIX A-1:  Sample Scheduling Order for *Inter partes* Review, Post-Grant Review, and Covered Business Method Patents Review (based on the trial rules)**. ....... 91

**APPENDIX A-2:  Sample Scheduling Order for Derivation Proceedings** ..................... 99

**APPENDIX B:  Protective Order Guidelines (based on the trial rules)** ....................... 107

**APPENDIX C:  Model Order Regarding E-Discovery in Trials Before The Patent Trial and Appeal Board** ................................................................ 123

**APPENDIX D:  Testimony Guidelines** ........................................................... 127

**Introduction**

This consolidated Office Patent Trial Practice Guide ("Practice Guide") incorporates the updates from August 2018 and July 2019 into the original August 2012 Practice Guide.

In August 2012, the Office published the Practice Guide, concurrent with the promulgation of the AIA Trial Rules.  *See* 77 Fed. Reg. 48,756 (Aug. 14, 2012).  The Practice Guide apprised the public of standard practices before the Board during AIA trial proceedings, including *inter partes* reviews, post-grant reviews, covered business method reviews, and derivation proceedings.  The Practice Guide also encouraged consistency of procedures among panels of the Board.

The Office has updated the Practice Guide to take into account stakeholder feedback, lessons learned during the years since the first AIA trial, and the natural evolution of the Board's practices.  A first update to the Practice Guide was published on August 13, 2018, and a second update was published on July 16, 2019.  This edition incorporates the updates from August 2018 and July 2019 into the original August 2012 Practice Guide so that the most recent versions of all sections of the Practice Guide are available in a single document.  It also makes revisions to ensure consistency across the newly consolidated guide.  Revisions to reconcile updates and to reflect the Board's current practices relate to institution of trial after *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348 (2018); use of sur-replies in lieu of observations; how parties may contact the Board to request an initial conference call; use of word counts; updates to the sample scheduling order for derivation proceedings; and updates to the default protective order.  The Office anticipates making further updates, if needed, on an annual

basis.  Suggestions regarding the Practice Guide can be sent to

PTABAIATrialSuggestions@uspto.gov.


**Background**:  The Leahy-Smith America Invents Act (AIA) establishes several new trial

proceedings to be conducted by the Board including:  (1) *inter partes* review (IPR); (2) post-

grant review (PGR); (3) a transitional program for covered business method patents (CBM);

and (4) derivation proceedings.  The AIA requires the Office to promulgate rules for the

proceedings, with the PGR, IPR, and CBM rules to be in effect one year after AIA enactment

(September 16, 2012) and the derivation rules to be in effect 18 months after AIA enactment

(March 16, 2013).


Consistent with the statute, the Office published a number of notices of proposed rulemaking

in February of 2012, and requested written comments on the Office's proposed

implementation of the new trial proceedings of the AIA.  The Office also hosted a series of

public educational roadshows, across the country, regarding the proposed rules.  The

resulting patent trial regulations lay out a framework for conducting the proceedings aimed at

streamlining and converging the issues for decision.  In doing so, the Office's goal is to

conduct proceedings in a timely, fair, and efficient manner.  Further, the Office has designed

the proceedings to allow each party to determine the preferred manner of putting forward its

case, subject to the guidance of judges who determine the needs of a particular case and issue

procedural and substantive rulings throughout the proceedings.


Additionally, the Office published a practice guide based on the proposed trial rules in the

Federal Register to provide the public an opportunity to comment. *Practice Guide for Proposed Trial Rules*, 77 Fed. Reg. 6868 (Feb. 9, 2012) (Request for Comments). In light of the public comments and the final rules, the Office published the original August 2012 Practice Guide. *Office Patent Trial Practice Guide; Rule*, 77 Fed. Reg. 48,756 (Aug. 14, 2012). This Practice Guide is intended to advise the public on the general framework of the rules, including the structure and times for taking action in each of the AIA proceedings.

**Statutory Requirements**: The AIA provides certain minimum requirements for each of the proceedings. Provided below is a brief overview of these requirements.

Proceedings begin with the filing of a petition to institute a trial. The petition must be filed with the Board consistent with any time period required by statute and be accompanied by the evidence the petitioner seeks to rely upon. *See, e.g.*, 35 U.S.C. §§ 135(a), 311(c); 37 C.F.R. § 42.3. For IPR, PGR, and CBM, the patent owner is afforded an opportunity to file a preliminary response. 35 U.S.C. §§ 313, § 323.

The Board, acting on behalf of the Director, may institute a trial where the petitioner establishes that the standards for instituting the requested trial are met, taking into account any preliminary response filed by the patent owner. Conversely, the Board may not authorize a trial where the information presented in the petition, taking into account any patent owner preliminary response, fails to meet the requisite standard for instituting the trial. *See, e.g.*, 35 U.S.C. §§ 314, 324. Where there are multiple matters in the Office involving the same patent, the Board may determine how the proceedings will proceed, including

providing for a stay, transfer, consolidation, or termination of any such matter.  *See, e.g.*, 35 U.S.C. §§ 315, 325.

The AIA requires that the Board conduct AIA trials and that the Director prescribe regulations concerning the conduct of those trials.  35 U.S.C. §§ 6, 135, 316, 326.  For example, for IPR, PGR, and CBM, the AIA mandates the promulgation of rules including motions to seal, procedures for filing supplemental information, standards and procedures for discovery, sanctions for improper use of the proceeding, entry of protective orders, and oral hearings.  *See, e.g.*, 35 U.S.C. §§ 316(a), 326.  Additionally, the AIA mandates the promulgation of rules for IPR, PGR, and CBM concerning the submission of a patent owner response with supporting evidence and allowing the patent owner a motion to amend the patent.  *Id.*  As required by the AIA, the Office has promulgated rules governing the conduct of trials before the Board.  *See generally* 37 C.F.R. § 42.1 *et seq.*

A petitioner and a patent owner may terminate the proceeding with respect to the petitioner by filing a written agreement with the Board, unless the Board has already decided the merits of the proceeding before the request for termination is filed.  *See, e.g.*, 35 U.S.C. §§ 317, 327.  If no petitioner remains in the proceeding, the Board may terminate the review or proceed to a final written decision.  For derivation proceedings, the parties may arbitrate issues in the proceeding, but nothing precludes the Office from determining the patentability of the claimed inventions involved in the proceeding.  35 U.S.C. § 135.  Where a trial has been instituted and not dismissed, the Board will issue a final written decision with respect to the challenged claims.  35 U.S.C. §§ 135, 318, 328.

For IPR, PGR, and CBM, the AIA requires that the Office consider the effect of the regulations on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete the proceedings. 35 U.S.C. §§ 316, 326. In developing the general trial rules, as well as the specific rules for the individual proceedings, the Office has taken these considerations into account. Further, the specific rules for the individual proceedings take into account the jurisdictional and timing requirements for the particular proceedings.

**General Overview of Proceedings**: Generally, the proceedings begin with the filing of a petition that identifies all of the claims challenged and the grounds and supporting evidence on a claim-by-claim basis. Within three months of notification of a filing date, the patent owner in an IPR, PGR, or CBM proceeding may file a preliminary response to the petition, including a simple statement that the patent owner elects not to respond to the petition. The Board acting on behalf of the Director will determine whether to institute a trial within three months of the date the patent owner's preliminary response was due or was filed, whichever is first.

In instituting a trial, the Board will either (1) institute as to all claims challenged in the petition and on all grounds in the petition, or (2) institute on no claims and deny institution. The Board will not institute on fewer than all claims or all challenges in a petition. *See SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348, 1359–60 (2018); *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1359–62 (Fed. Cir. 2018); and *Adidas AG v. Nike, Inc.*, 894 F.3d 1256, 1258

(Fed. Cir. 2018).  If a trial is instituted, the Board generally will provide analysis of the strengths and weaknesses of all challenges in the petition in order to provide guidance to the parties for the upcoming trial.  A party dissatisfied with the Board's determination to institute a trial may request rehearing as to points believed to have been overlooked or misapprehended.  *See* 37 C.F.R. §§ 42.71(c), (d).

The Board will enter a Scheduling Order (*see, e.g.*, Appendix A) concurrent with the decision to institute a trial.  The Scheduling Order will set due dates for the trial taking into account the complexity of the proceeding but ensuring that the trial is completed within one year of institution.

For example, a Scheduling Order for an IPR or PGR might, consistent with 37 C.F.R. §§ 42.120 and 42.220, provide a three month deadline for patent owner discovery and for filing a patent owner response and motion to amend.  Once the patent owner's response and motion to amend have been filed, the Scheduling Order might provide the petitioner with three months for discovery and for filing a petitioner's reply to the response and the petitioner's opposition to the amendment.  The Scheduling Order might then provide the patent owner with one month for discovery and for filing a patent owner reply to petitioner's opposition to a patent owner amendment.  A sample timeline is provided below:



For another sample timeline, *see* "Appendix 1A (PO Reply Timeline)," *Notice Regarding a New Pilot Program Concerning Motion to Amend Practice and Procedures in Trial Proceedings Under the America Invents Act Before the Patent Trial and Appeal Board*, 84 Fed. Reg. 9497, 9506 (Mar. 15, 2019) (presenting a pilot timeline for scheduling orders issued in AIA trials instituted on or after March 15, 2019, indicating, for example, that a petitioner has 6 weeks to file a reply to a patent owner's response to the petition, and a patent owner has 6 weeks to file a sur-reply in response to that reply).

Sequence of discovery.  Once instituted, absent special circumstances, discovery will proceed in a sequenced fashion.  For example, the patent owner may begin deposing the petitioner's declarants once the proceeding is instituted.  After the patent owner has filed a patent owner response and any motion to amend the claims, the petitioner may depose the patent owner's declarants.  Similarly, after the petitioner has filed a reply to the patent owner's response and an opposition to an amendment, the patent owner may depose the petitioner's declarants and file a sur-reply in support of its response and a reply in support of its motion to amend claims.  Where the patent owner relies upon new declaration evidence in support of its motion to amend, the petitioner will be authorized to depose the declarants and submit a sur-reply.  Once the time for taking discovery in the trial has ended, the parties will be authorized

7

to file motions to exclude evidence believed to be inadmissible.  Admissibility of evidence is generally governed by the Federal Rules of Evidence.

Sequence of filing responses and motions.  A party may request that an initial conference call be held about one month from the date of institution to discuss the motions that the parties intend to file and to determine if any adjustment needs to be made to the Scheduling Order. The patent owner may file a patent owner's response and/or a motion to amend the claims by the time set in the Scheduling Order.  The petitioner may then file a reply to the patent owner's response and any opposition to the patent owner's motion to amend.  Each party may file a sur-reply (i.e., to a reply to a patent owner's response or to a reply to an opposition to a motion to amend).  Both parties will then be permitted an opportunity to file motions to exclude an opponent's evidence believed to be inadmissible.  After all motions have been filed, the parties will be afforded an opportunity to have an oral argument at the Board.

**Summary of the Rules**:  The following is a general summary of the rules for the proceedings.

**I.  General Procedures**:  The rules are to be construed so as to ensure the just, speedy, and inexpensive resolution of a proceeding and, where appropriate, the rules may be modified to accomplish these goals.  37 C.F.R. §§ 42.1(b), 42.5(a), (b).

**A.  Jurisdiction and Management of the Record**

1. Jurisdiction:  35 U.S.C. § 6(b) provides that the Board is to conduct derivation

8

proceedings, *inter partes* reviews, and post-grant reviews.  The Board also conducts the transitional program for covered business method reviews, which are subject to Board review under 35 U.S.C. §§ 6(b), 326(c), and Pub. L. 112-29, § 18.  The Board therefore will have exclusive jurisdiction within the Office over every application and patent that is involved in a derivation, IPR, PGR, or CBM proceeding.  *Ex parte* reexamination proceedings and *inter partes* reexamination proceedings are not "involved" patents (as defined in 37 C.F.R. § 42.2) in derivation, IPR, PGR, and CBM proceedings and are thus treated separately except as ordered by the Board.

2. <u>Prohibition on *Ex Parte* Communications</u>:  All substantive communications with the Board regarding a proceeding must include all parties to the proceeding, except as otherwise authorized.  37 C.F.R. § 42.5(d).  The prohibition on *ex parte* communications does not extend to:  (1) ministerial communications with support staff (for instance, to arrange a conference call); (2) conference calls or hearings in which opposing counsel declines to participate; (3) informing the Board in one proceeding of the existence or status of a related Board proceeding; or (4) reference to a pending case in support of a general proposition (for instance, citing a published opinion from a pending case or referring to a pending case to illustrate a systemic problem).

<u>Arranging a conference call with the Board</u>.  The Board encourages the use of conference calls to raise and resolve issues in an expedited manner.  Prior to making a request for a conference call, the parties should meet and confer to resolve any disputes.  If attempts to resolve the dispute fail, a party may request a conference call with the Board.  The Board

envisions that most of the procedural issues arising during a proceeding will be handled during a conference call or shortly thereafter, i.e., in a matter of days.  When arranging a conference call, parties should be prepared to discuss with a Trial Section paralegal why the call is needed and what materials may be needed during the call, e.g., a particular exhibit. When contacting the Board to arrange a conference call, a party to a proceeding should notify the Board if it intends to provide a court reporter for the call.  If a court reporter is present for the conference call, the party that retained the court reporter should notify the panel at the beginning of the call that a reporter is on the line, and shall file the transcript of the call as an exhibit to the proceeding within one week of receiving the transcript.

Refusal to participate.  The Board has the discretion to permit a hearing or conference call to take place even if a party refuses to participate.  In such cases, the Board may order as a condition for the call additional safeguards, such as the recording of the communication and the entry of the recording into the record.

**B. Counsel**

Need for lead and back-up counsel.  A party represented by counsel must designate both a lead as well as a back-up counsel who can conduct business on behalf of the lead counsel, as instances may arise where lead counsel may be unavailable.  37 C.F.R. § 42.10(a).

Power of attorney.  A power of attorney must be filed with the designation of counsel, unless the designated counsel is already counsel of record.  37 C.F.R. § 42.10(b).

10

<u>Pro hac vice</u>.  The Board may recognize counsel *pro hac vice* during a proceeding upon a showing of good cause, and subject to the requirement that lead counsel is a registered practitioner.  37 C.F.R. § 42.10(c).  The Board may impose other considerations as well.  *Id.*  Proceedings before the Office can be technically complex.  For example, it is expected that amendments to a patent will be sought.  The grant of a motion to appear *pro hac vice* is a discretionary action taking into account the specifics of the proceedings.  Similarly, the revocation of *pro hac vice* is a discretionary action taking into account various factors, including incompetence, unwillingness to abide by the Office's Rules of Professional Conduct, and incivility.

The Office expects that lead counsel will, and back-up counsel may, participate in all hearings and conference calls with the Board and will sign all papers submitted in the proceeding.  In addition, the role of back-up counsel is to conduct business with the Office on behalf of lead counsel when lead counsel is not available.  Actions not conducted before the Office (e.g., taking of deposition) may be conducted by lead or back-up counsel.

## C.  Electronic Filing

Electronic filing is the default manner in which documents are to be filed with the Board.  37 C.F.R. § 42.6(b).  Electronic filing of legal documents is being implemented across the country in state and federal courts.  The use of electronic filing aids in the efficient administration of the proceeding, improves public accessibility, and provides a more effective document management system for the Office and parties.  Electronic submission information is provided on the Board's Web site (www.uspto.gov/PTAB).

Paper filing may be used where appropriate, but must be accompanied by a motion explaining the need for non-electronic filing. 37 C.F.R. § 42.6(b). Based upon experience, the Board does not expect to receive many requests to file paper submissions. Circumstances where a paper filing may be warranted include those occasions where the Office's electronic filing system is unable to accept filings. Alternatively, if a problem with electronic filing arises during normal business hours, a party may contact the Board and request a one-day extension of time for due dates that are set by rule or orders of the Board. 37 C.F.R. § 42.5. In the unlikely event that an administrative patent judge is not available to rule on the extension, the Board may grant an extension the day after the paper is due, which includes situations where electronic filing problems are shown to have occurred.

**D. Mandatory Notices**

The rules require that parties to a proceeding provide certain mandatory notices, including identification of the real parties-in-interest, related matters, lead and back-up counsel, and service information. 37 C.F.R. § 42.8. Where there is a change of information, a party must file a revised notice within 21 days of the change. 37 C.F.R. § 42.8(a)(3).

1. Real Party-in-Interest or Privy: The core functions of the "real party-in-interest" and "privies" requirements are to assist members of the Board in identifying potential conflicts, and to assure proper application of the statutory estoppel provisions. The latter, in turn, seeks to protect patent owners from harassment via successive petitions by the same or related parties, to prevent parties from having a "second bite at the apple," and to protect the

12

integrity of both the USPTO and federal courts by assuring that all issues are promptly raised and vetted. *Cf.* Fed. R. Civ. P. 17(a) (Advisory Committee Note to 1966 Amendment to Rule 17(a)) ("[T]he modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata."). The USPTO will apply traditional common-law principles with these goals in mind and parties will be well-served to factor in these considerations when determining whom to identify.

Whether a party who is not a named participant in a given proceeding nonetheless constitutes a "real party-in-interest" or "privy" to that proceeding is a highly fact-dependent question. *See generally Taylor v. Sturgell*, 553 U.S. 880 (2008); 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE §§ 4449, 4451 (2d ed. 2011) (hereinafter "WRIGHT & MILLER"). Such questions will be handled by the Office on a case-by-case basis taking into consideration how courts have viewed the terms "real party-in-interest" and "privy." *See, e.g.*, *Taylor*, 553 U.S. at 893–895 and 893 n.6 (noting that "[t]he list that follows is meant only to provide a framework [for the decision], not to establish a definitive taxonomy"). Courts invoke the terms "real party-in-interest" and "privy" to describe relationships and considerations sufficient to justify applying conventional principles of estoppel and preclusion. Accordingly, courts have avoided rigid definitions or recitation of necessary factors. Similarly, multiple Federal Rules invoke the terms without attempting to define them or what factors trigger their application. *See, e.g.*, Fed. R. Civ. P. 17; Fed. Cir. R. 47.4.

The typical common-law expression of the "real party-in-interest" (the party "who, according to the governing substantive law, is entitled to enforce the right") does not fit directly into the AIA trial context. *See* 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE CIVIL § 1543 (3d ed. 2011) (discussing Fed. R. Civ. P. 17). That notion reflects standing concepts; no such requirement exists in the IPR or PGR context, although an analogous requirement exists in the CBM context. In an IPR or PGR proceeding, there is no "right" being enforced since any entity (other than the patent owner) may file an IPR or PGR petition. However, the spirit of that formulation as to IPR and PGR proceedings means that, at a general level, the "real party-in-interest" is the party that desires review of the patent. Thus, the "real party-in-interest" may be the petitioner itself, and/or it may be the party or parties at whose behest the petition has been filed. In this regard, the Office's prior application of similar principles in the *inter partes* reexamination context offers additional guidance. *See generally In re Guan et al. Inter Partes Reexamination Proceeding*, Control No. 95/001,045, Decision Vacating Filing Date (Aug. 25, 2008). Similar considerations apply to CBM proceedings, although the statute governing those proceedings also requires that the party seeking the proceeding, or its real party-in-interest or privy, have been sued for infringing the subject patent, or been charged with infringement under that patent.

The notion of "privity" is more expansive, encompassing parties that do not necessarily need to be identified in the petition as a "real party-in-interest." The Office intends to evaluate what parties constitute "privies" in a manner consistent with the flexible and equitable considerations established under federal caselaw. Ultimately, that analysis seeks to

14

determine whether the relationship between the purported "privy" and the relevant other party is sufficiently close such that both should be bound by the trial outcome and related estoppels. This approach is consistent with the legislative history of the AIA, which indicates that Congress included "privies" within the parties subject to the statutory estoppel provisions in an effort to capture "the doctrine's practical and equitable nature," in a manner akin to collateral estoppel. In that regard, the legislative history endorsed the expression of "privy" as follows:

> The word "privy" has acquired an expanded meaning. The courts, in the interest of justice and to prevent expensive litigation, are striving to give effect to judgments by extending "privies" beyond the classical description. The emphasis is not on the concept of identity of parties, but on the practical situation. Privity is essentially a shorthand statement that collateral estoppel is to be applied in a given case; there is no universally applicable definition of privity. The concept refers to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is sufficiently close so as to justify application of the doctrine of collateral estoppel.

154 Cong. Rec. S9987 (daily ed. Sept. 27, 2008) (statement of Sen. Kyl) (citing *Cal. Physicians' Serv. v. Aoki Diabetes Research Inst.*, 163 Cal.App.4th 1506 (Cal. App. 2008)); *see also* 157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) (incorporating prior 2008 statement). Subsequent legislative history expanded on the prior discussion of "privy" by noting that "privity is an equitable rule that takes into account the 'practical situation,' and should extend to parties to transactions and other activities relating to the property in question." 157 Cong. Rec. S1376 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl).

There are multiple factors relevant to the question of whether a non-party may be recognized as a "real party-in-interest" or "privy." *See, e.g.*, *Taylor*, 553 U.S. at 893–895 and 893 n.6 (noting that "[t]he list that follows is meant only to provide a framework [for the decision],

not to establish a definitive taxonomy"). A common consideration is whether the non-party exercised or could have exercised control over a party's participation in a proceeding. *See, e.g.*, *id.* at 895; *see generally* WRIGHT & MILLER § 4451. The concept of control generally means that "it should be enough that the nonparty has the actual measure of control or opportunity to control that might reasonably be expected between two formal coparties." WRIGHT & MILLER § 4451. Courts and commentators agree, however, that there is no "bright-line test" for determining the necessary quantity or degree of participation to qualify as a "real party-in-interest" or "privy" based on the control concept. *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 759 (1st Cir. 1994). *See also* WRIGHT & MILLER § 4451 ("The measure of control by a nonparty that justifies preclusion cannot be defined rigidly."). Accordingly, the rules do not enumerate particular factors regarding a "control" theory of "real party-in-interest" or "privy" under the statute.

Additionally, many of the same considerations that apply in the context of "*res judicata*" will likely apply in the "real party-in-interest" or "privy" contexts. *See Gonzalez*, 27 F.3d at 759; *see generally* WRIGHT & MILLER § 4451. Other considerations may also apply in the unique context of statutory estoppel. *See generally*, *e.g.*, *In re Arviv Reexamination Proceeding*, Control No. 95/001,526, Decision Dismissing § 1.182 and § 1.183 Petitions, at 6 (Apr. 18, 2011); *In re Beierbach Reexamination Proceeding*, Control No. 95/000,407, Decision on § 1.182 and § 1.183 Petitions, at 6 (July 28, 2010); *In re Schlecht Inter Partes Reexamination Proceeding*, Control No. 95/001,206, Decision Dismissing Petition, at 5 (June 22, 2010); *In re Guan Inter Partes Reexamination Proceeding*, Control No. 95/001,045, Decision Vacating Filing Date, at 8 (Aug. 25, 2008).

The Office has received requests to state whether particular facts will qualify a party as a "real party-in-interest" or "privy."  Some fact-combinations will generally justify applying the "real party-in-interest" or "privy" label.  For example, a party that funds and directs and controls an IPR or PGR petition or proceeding constitutes a "real party-in-interest," even if that party is not a "privy" of the petitioner.  But whether something less than complete funding and control suffices to justify similarly treating the party requires consideration of the pertinent facts.  *See, e.g.*, *Cal. Physicians*, 163 Cal.App.4th at 1523-25 (discussing the role of control in the "privy" analysis, and observing that "preclusion can apply even in the absence of such control").  The Office will handle such questions on a case-by-case basis taking into consideration how courts have viewed the terms.  Similarly, while generally a party does not become a "real party-in-interest" or a "privy" of the petitioner merely through association with another party in an unrelated endeavor, slight alterations in the facts, as well as consideration of other facts, might result in a different conclusion.  So, for example, if Trade Association X files an IPR petition, Party A does not become a "real party-in-interest" or a "privy" of the Association simply based on its membership in the Association.  Similarly, if Party A is part of a Joint Defense Group with Party B in a patent infringement suit, and Party B files a PGR petition, Party A is not a "real party-in-interest" or a "privy" for the purposes of the PGR petition based solely on its participation in that Group.  That is not to say that Party A's membership in Trade Association X, or the Joint Defense Group, in those scenarios is irrelevant to the determination; deeper consideration of the facts in the particular case is necessary to determine whether Party A is a "real party-in-interest" or a "privy" of the petitioner.  Relevant factors include:  Party A's relationship with the

petitioner; Party A's relationship to the petition itself, including the nature and/or degree of involvement in the filing; and the nature of the entity filing the petition.  In short, because rarely will one fact, standing alone, be determinative of the inquiry, the Office cannot prejudge the impact of a particular fact on whether a party is a "real party-in-interest" or "privy" of the petitioner.

2.  <u>Related Matters</u>:  Parties to a proceeding are to identify any other judicial or administrative matter that would affect, or be affected by, a decision in the proceeding. Judicial matters include actions involving the patent in federal court.  Administrative matters include every application and patent claiming, or which may claim, the benefit of the priority of the filing date of the party's involved patent or application as well as any *ex parte* and *inter partes* reexaminations for an involved patent.

3.  <u>Identification of service information</u>:  Parties are required to identify service information to allow for efficient communication between the Board and the parties.  37 C.F.R. § 42.8. Additionally, while the Board is authorized to provide notice by means other than mailing to the correspondence address of record, it is ultimately the responsibility of the applicant or patent owner to maintain a proper correspondence address in the record.  *Ray v. Lehman*, 55 F.3d 606, 610 (Fed. Cir. 1995).

Under 37 C.F.R. § 42.6(e), service may be made electronically upon agreement of the parties. For example, the parties could agree that electronic filing with the Board of a document constitutes electronic service.

### E.  Public Availability and Confidentiality

The rules aim to strike a balance between the public's interest in maintaining a complete and understandable file history and the parties' interest in protecting truly sensitive information.

1. <u>Public availability</u>:  The record of a proceeding, including documents and things, shall be made available to the public, except as otherwise ordered.  37 C.F.R. § 42.14.  Accordingly, a document or thing will be made publicly available, unless a party files a motion to seal that is then granted by the Board.

2. <u>Confidential information</u>:  The rules identify confidential information in a manner consistent with Federal Rule of Civil Procedure 26(c)(1)(G), which provides for protective orders for trade secret or other confidential research, development, or commercial information.  37 C.F.R. § 42.54.

3. <u>Motion to seal</u>:  A party intending a document or thing to be sealed may file a motion to seal concurrent with the filing of the document or thing.  37 C.F.R. § 42.14.  The document or thing will be provisionally sealed on receipt of the motion and remain so pending the outcome of the decision on motion.

4. <u>Protective orders</u>:  A party may file a motion to seal where the motion contains a proposed protective order, such as the default protective order in Appendix B.  37 C.F.R. § 42.54.  A protective order is not entered by default but must be proposed by one or more parties and

must be approved and entered by the Board. Specifically, protective orders may be issued for good cause by the Board to protect a party from disclosing confidential information. 37 C.F.R. § 42.54. Guidelines on proposing a protective order in a motion to seal, including a Default Protective Order, are provided in Appendix B. The document or thing will be protected on receipt of the motion and remain so, pending the outcome of the decision on motion. If a motion for a protective order is not granted, the party submitting the confidential information will have the opportunity to have the submitted information expunged from the record. Otherwise, the submitted information may be publicly disclosed.

5. <u>Confidential information in a petition</u>: A petitioner filing confidential information with a petition may, concurrent with the filing of the petition, file a motion to seal with a proposed protective order as to the confidential information. A petitioner filing information under seal with a petition is not required to serve the confidential information. 37 C.F.R. § 42.55.

A petitioner may seek entry of the default protective order in Appendix B or may seek entry of an alternative protective order. Where the petitioner seeks entry of the default protective order, the patent owner will be given access to the confidential information prior to institution of the trial by agreeing to the terms of a default order. 37 C.F.R. § 42.55(a). The Board anticipates that a patent owner may use the Board's electronic filing system to agree to the default protective order and would, upon confirmation of the agreement by the Board, be given access to the provisionally sealed information.

Where a petitioner files a motion to seal with the petition that seeks entry of a protective

order other than the default protective order, a patent owner may only access the sealed confidential information prior to the institution of the trial by:

> (1) agreeing to the terms of the protective order requested by the petitioner;

> (2) agreeing to the terms of a protective order that the parties file jointly; or

> (3) obtaining entry of a protective order (e.g., the default protective order).

For example, the patent owner could arrange a conference call with the Board and opposing party, and provide a suitable basis for entering the default protective order as opposed to the petitioner's proposed protective order.  37 C.F.R. § 42.55(b).  The Board anticipates that a patent owner may use the Board's electronic filing system to agree to the protective order requested by the petitioner and would, upon confirmation of the agreement by the Board, be given access to the provisionally sealed information.  Similarly, the Board anticipates that a patent owner may use the Board's electronic filing system to file a protective order that the parties jointly agree to and would, upon confirmation of the agreement by the Board, be given access to the provisionally sealed information.  Alternatively, the patent owner would be given access on entry of a protective order by the Board.

The rule seeks to streamline the process of seeking protective orders prior to the institution of the review while balancing the need to protect confidential information against an opponent's ability to access information used to challenge the opponent's claims.

6. Expungement of confidential information:  Confidential information that is subject to a protective order ordinarily would become public 45 days after denial of a petition to institute

a trial or 45 days after final judgment in a trial.  There is an expectation that information will be made public where the existence of the information is referred to in a decision to grant or deny a request to institute a review or is identified in a final written decision following a trial.  A party seeking to maintain the confidentiality of information, however, may file a motion to expunge the information from the record prior to the information becoming public.  37 C.F.R. § 42.56.  The rule balances the needs of the parties to submit confidential information with the public interest in maintaining a complete and understandable file history for public notice purposes.  The rule encourages parties to redact sensitive information, where possible, rather than seeking to seal entire documents.

7.  <u>Derivation</u>:  A party in a derivation submitting dates of conception to establish inventorship may wish to file the information under seal.  Where the dates of conception are filed under seal, a party may request that an opponent not be given access to the conception dates until the opponent's conception dates have been provided to the Board.

**F.  Discovery**

Discovery is a tool to develop a fair record and to aid the Board in assessing the credibility of witnesses.  To streamline the proceedings, the rules and Scheduling Order provide a sequenced discovery process upon institution of the trial.  Specifically, each party will be provided respective discovery periods, beginning with the patent owner.  The sequenced discovery allows parties to conduct meaningful discovery before they are required to submit their respective motions and oppositions during the trial.  Thus, discovery before the Board is focused on what the parties reasonably need to respond to the grounds raised by an opponent.

In this way, the scope of the trial continually narrows.

1. <u>Routine discovery</u>:  Routine discovery includes:  (1) production of any exhibit cited in a paper or testimony; (2) the cross-examination of the other sides declarants; and (3) relevant information that is inconsistent with a position advanced during the proceeding.  Routine discovery places the parties on a level playing field and streamlines the proceeding.  Board authorization is not required to conduct routine discovery, although the Board will set the times for conducting this discovery in its Scheduling Order.

(a) <u>Inconsistent statements</u>:  The following situations exemplify instances where disclosures of inconsistent statements are to be made.  Example 1:  where a petitioner relies upon an expert affidavit alleging that a method described in a patent cannot be carried out, the petitioner would be required to provide any non-privileged work undertaken by, or on behalf of, the petitioner that is inconsistent with the contentions in the expert's affidavit. Example 2:  where a patent owner relies upon surprising and unexpected results to rebut an allegation of obviousness, the patent owner should provide the petitioner with non-privileged evidence that is inconsistent with the contention of unexpected properties.

(b) <u>Witness expenses</u>:  The burden and expense of producing a witness for redirect or cross-examination should normally fall on the party presenting the witness.  Thus, a party presenting a witness's testimony by affidavit should arrange to make the witness available for cross-examination.  This applies to witnesses employed by a party as well as experts and non-party witnesses.  If there are associated expenses such as expert witness fees or travel,

those should be borne by the party presenting the testimony.  Should the witness's testimony be presented by transcript, the same rules apply, and the witness fees and expenses should be borne by the presenting party.

(c) <u>Document Translation</u>:  All proceedings before the Board will be conducted in English. Translations therefore must be provided for: (1) those documents produced in discovery under 37 C.F.R. § 42.51; and (2) all documents relied on, or otherwise used, during the proceedings.   Unless accompanied by an English language translation, such documents in a language other than English will not be considered by the Board.

2.  <u>Additional discovery</u>:  A request for additional discovery must be in the form of a motion, although the parties may agree to such discovery among themselves.  37 C.F.R. § 42.51(b)(2).  Parties to an AIA trial can generally seek the same types of discovery available under the Federal Rules of Civil Procedure.  The standard for granting such requests varies with the proceeding.

By way of background, an "interests of justice" standard applies in IPR and derivation proceedings (37 C.F.R. § 42.51(b)(2)), whereas the slightly more liberal "good cause" standard applies in PGR and CBM proceedings (37 C.F.R. § 42.224).  The more liberal "good cause" standard applies to PGR and CBM proceedings because the scope of these proceedings may be broader than IPRs.  They include all of the grounds of IPRs, as well as 35 U.S.C. §§ 101 and 112 (with the exception of failure to disclose the best mode).  Also, because a petition for a PGR must be filed no later than nine months after the date of the

grant of a patent or of the issuance of a reissue patent (35 U.S.C. § 321(c)), information regarding the patentability of claims subject to PGR review may be more readily available than information regarding the patentability of claims subject to other forms of review that could take place many years after the challenged patent issued, and therefore discovery in a PGR is likely to be obtained from the patent owner in a less burdensome manner.  The discussion below centers on additional discovery under the "interests of justice" standard. In determining when a request for additional discovery will be granted in IPRs under the in the "interests of justice" standard, the Board will be guided primarily by the factors set forth in the Board's precedential decision in *Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*, Case IPR2012-00001 (PTAB Mar. 5, 2013) (Paper 26) (precedential).  Similar factors for consideration of such requests under the "good cause" standard are set forth in *Bloomberg Inc. v. Markets-Alert Pty Ltd.*, Case CBM2013-00005 (PTAB May 29, 2013) (Paper 32) (precedential).  Parties in PGR and CBM proceedings should also refer to that decision for guidance.

In *Garmin*, the Board set forth a set of five factors considered to be important in authorizing and deciding a motion for additional discovery:

"1. More Than A Possibility And Mere Allegation—The mere possibility of finding something useful, and mere allegation that something useful will be found, are insufficient to demonstrate that the requested discovery is necessary in the interest of justice.  The party requesting discovery should already be in possession of evidence" or reasoning "tending to show beyond speculation that in fact something useful will be uncovered."  *Garmin*, Case

IPR2012-00001, slip op. at 6.  *See, e.g., Kashiv Pharma LLC v. Purdue Pharma L.P.*, Case IPR2018-00625 (PTAB July 31, 2018) (Paper 20) (granting patent owners' motion for additional discovery where patent owners identified several pieces of "threshold" evidence that tended to show that the two requested depositions would shed light on the question of whether an additional party should have been named as a real party-in-interest); *Mylan Pharmaceuticals Inc. v. Allergan Inc.*, Case IPR2016-01127 (PTAB May 31, 2017) (Paper 28) (granting additional discovery of data underlying figures relied on by the patent owner in order for the petitioner to fully develop its rebuttal to patent owner's evidence of unexpected results).  Additionally, "'useful' . . . does not mean merely 'relevant' and/or 'admissible,'" but rather "means favorable in substantive value to a contention of the party moving for discovery." *Garmin*, Case IPR2012-00001, slip op. at 7.  *See, e.g., Corning Inc. v. DSM IP Assets B.V.*, Case IPR2013-00043 (PTAB June 21, 2013) (Paper 27) (finding that laboratory notebooks were per se useful because they contained protocols and procedures used to synthesize and test oligomers and coatings that were relied on by the petitioner's expert to demonstrate unpatentability of the challenged claims).

"2. Litigation Positions And Underlying Basis—Asking for the other party's litigation positions and the underlying basis for those positions is not necessary in the interest of justice.  The Board has established rules for the presentation of arguments and evidence. There is a proper time and place for each party to make its presentation.  A party may not attempt to alter the Board's trial procedures under the pretext of discovery." *Garmin*, Case IPR2012-00001, slip op. at 6.  Therefore, a party will receive this information in due course. Thus, contention interrogatories would typically not be permitted.  *See, e.g., St. Jude Med.,*

*LLC v. Snyders Heart Valve LLC*, Case IPR2018-00105 (PTAB Oct. 18, 2018) (Paper 37) (denying petitioner's request of expert reports and deposition transcripts from a parallel litigation because petitioner stated that such discovery was sought to probe patent owner's IPR positions).

"3.  Ability To Generate Equivalent Information By Other Means"—Production by another of "[i]nformation a party can reasonably figure out or assemble without a discovery request would not be in the interest of justice. . . ."  *Garmin*, Case IPR2012-00001, slip op. at 6.  *See, e.g.*, *Dynamic Air Inc. v. M-I Drilling Fluids UK Ltd.*, Case IPR2016-00260 (PTAB Nov. 30, 2016) (Paper 39) (denying petitioner's request for additional documents and deposition partly because petitioner did not show that it could not obtain information about the state of the art and properties of drill cuttings by other means). "In that connection, the Board would want to know the ability of the requesting party to generate the requested information without need of discovery."  *Garmin*, Case IPR2012-00001, slip op. at 6.

"4.  Easily Understandable Instructions"—The requests "should be easily understandable."  *Garmin*, Case IPR2012-00001, slip op. at 6.

"5. Requests Not Overly Burdensome To Answer—The requests must not be overly burdensome to answer, given the expedited nature of *Inter Partes* Review.  The burden includes financial burden, burden on human resources, and burden on meeting the time schedule of *Inter Partes* Review.  Requests should be sensible and reasonably tailored according to a genuine need" for the discovery.  *Garmin*, Case IPR2012-00001, slip op. at 7.

A party seeking authorization to file a motion for additional discovery should be prepared to address the *Garmin* factors and any other pertinent factors during a conference call with the Board to discuss the motion.

Two areas where additional discovery has been sought frequently are identifying real parties-in-interest and secondary evidence of non-obviousness.  Narrowly focused requests for additional discovery on these issues may, if appropriate, be permitted.  *See, e.g.*, *Ventex Co. v. Columbia Sportswear N. Am., Inc.*, Case IPR2017-00651 (PTAB Dec. 19, 2017) (Paper 40) (granting additional "focused and narrow" discovery regarding production of "relevant testimony concerning secondary consideration of non-obviousness"); *but see Palo Alto Networks, Inc. v. Juniper Networks, Inc.*, Case IPR2013-00369 (PTAB Feb. 5, 2014) (Paper 36) (denying additional discovery relating to copying where patent owner failed to adequately explain how the allegedly copied feature was embodied in the claims for which trial was instituted and finding that the request appeared "not focused, overly broad, and unduly burdensome"); *see, e.g., Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.*, Case IPR2014-00488 (PTAB Nov. 5, 2014) (Paper 25) (granting additional discovery of information pertaining to real party-in-interest that was narrowly tailored to communications "regarding the preparation or filing of the Medtronic IPRs"); *but see Unified Patents v. Vilox Techs.*, Case IPR2018-00044 (PTAB Feb. 6, 2019) (Paper 64) (denying request for post-oral argument real party-in-interest discovery where patent owner acknowledged that the discovery would not have any impact on the merits of the final decision and did not assert that any time bar applied).

28

3.  Compelled testimony:  A party can request authorization to compel testimony under 35 U.S.C. § 24.  If a motion to compel testimony is granted, testimony may be (1) ex parte, subject to subsequent cross-examination, or (2) inter partes.  *Therriault v. Garbe*, 53 USPQ2d 1179, 1184 (BPAI 1999).  Prior to moving for or opposing compelled testimony, the parties should discuss which procedure is appropriate.  *See* Appendix D for guidance on compelled testimony.

4.  Mandatory Initial Disclosures:  37 C.F.R. § 42.51(a) provides for mandatory initial disclosures, either by agreement (subparagraph (a)(1)) or, where the parties fail to reach an agreement, by motion, if granted (subparagraph (a)(2)).  To proceed under 37 C.F.R. § 42.51(a)(1), the parties must submit any agreement reached on initial disclosures no later than the filing of the patent owner's preliminary response, or by the expiration of the time period for filing such a response.  *See* 37 C.F.R. § 42.51(a)(1)(i).

Where the parties agree to mandatory initial disclosures under 37 C.F.R. § 42.51(a)(1), two options are available as follows:

Option 1

This first option is modeled after Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure, and requires disclosure of the following information:  (1) the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims

29

or defenses, unless the use would be solely for impeachment; and (2) a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

Option 2

This second option is more extensive, and includes the following disclosures listed under both items I and II:

I.  If the petition seeks cancellation of one or more claims in whole or part on the basis of the existence of an alleged prior non-published public disclosure, the petitioner will provide a statement:  (1) identifying, to the extent known by the petitioner, the names and information sufficient to contact all persons other than those offering affidavits or declarations who are reasonably likely to know of the alleged prior non-published public disclosure; (2) indicating which of such persons are within the control of petitioner, or who have otherwise consented to appear for a testimony in connection with the proceeding; (3) indicating which, if any, of such persons are represented by petitioner's counsel; (4) identifying all documents and things within petitioner's possession, custody, or control referring to or relating to the alleged prior non-published public disclosure; and (5) identifying all things relating to the alleged prior non-published public disclosure, including a complete description, photographs, the chemical analysis (if the chemical composition is in issue), and computer code (for computer-related subject matter), and their locations, and whether petitioner will produce such things for inspection, analysis, testing, and sampling.

II.  If the petition seeks cancellation of one or more claims in whole or in part on the basis of the alleged obviousness of one or more of the claims, the petitioner will provide a statement: (1) identifying, to the extent known by the petitioner, the names and information sufficient to contact all persons other than those offering affidavits or declarations who are reasonably likely to have information regarding the secondary indicia of non-obviousness; (2) indicating which of such persons are within the control of petitioner, or have otherwise consented to appear for a testimony in connection with the proceeding; (3) indicating which, if any, of such persons are represented by petitioner's counsel; (4) identifying all documents and things within petitioner's possession, custody, or control referring to or relating to such secondary indicia of non-obviousness; and (5) identifying all things relating to the secondary indicia of non-obviousness, including a complete description, photographs, the chemical analysis (if the chemical composition is in issue), and computer code (for computer-related subject matter), and their locations, and whether petitioner will produce such things for inspection, analysis, testing, and sampling.

Under 37 C.F.R. § 42.51(a)(1)(ii), upon institution of a trial, the parties may automatically take discovery of the information identified in the initial disclosures.  Accordingly, the initial disclosures of a party shall be filed as exhibits as soon as reasonably practicable to permit discovery related to that information.  *See* 37 C.F.R. § 42.51(a)(1)(i).

5.  <u>Live testimony</u>:  Cross-examination may be ordered to take place in the presence of an administrative patent judge, which may occur at the deposition or oral argument. Occasionally, the Board will permit live testimony where the Board considers the demeanor

31

of a witness critical to assessing credibility.  Examples of where such testimony may be permitted before the Board include where derivation is an issue or where misconduct is alleged to have occurred during the proceeding.  In another instance, such testimony was allowed where the witness was an inventor who provided declaration testimony to antedate the references relied on by the petitioner to challenge patentability.  *See K-40 Elecs., LLC v. Escort, Inc.*, Case IPR2013-00203 (PTAB May 21, 2014) (Paper 34) (precedential).  In contrast, the testimony of an inventor at an oral hearing was considered new evidence, and was not permitted, when a declaration from the inventor had not been previously provided.  *See DePuy Synthes Prods., Inc. v. MEDIDEA, L.L.C.*, Case IPR2018-00315 (PTAB Jan. 23, 2019) (Paper 29) (precedential).

Live testimony will be necessary only in limited circumstances and requests for live testimony will be approached by the Board on a case-by-case basis.  Factors that may be considered by the Board in determining whether to permit live testimony are set forth in the Board's precedential decision in *K-40 Electronics*, Case IPR2013-00203, slip op. at 3.  Such factors may include the importance of the witness's testimony to the case, i.e., whether it may be case-dispositive.  *Id*.  Another factor favoring live testimony is if the witness is a fact witness.  *Id*.  In contrast, the credibility of experts often turns less on demeanor and more on the plausibility of their theories.  *See Andreu v. Sec'y of HHS*, 569 F.3d 1367, 1379 (Fed. Cir. 2009).  *See* Appendix D for guidance on testimony and Section II.M for additional information on live testimony at an oral hearing.

6.  Times and locations for witness cross-examination:  Under 37 C.F.R. § 42.53(c)(1), the

default time limits for compelled direct examination, cross-examination, and redirect examination are seven hours for direct examination, four hours for cross-examination, and two hours for redirect examination.  Similarly, under 37 C.F.R. § 42.53(c)(2), the default time limits for cross-examination, redirect examination, and recross-examination for uncompelled direct testimony are seven hours for cross-examination, four hours for redirect examination, and two hours for recross-examination.  *See* Appendix D: Testimony Guidelines, for more information.

The rules do not provide for a specific location for taking testimony other than providing that the testimony may be taken at any reasonable location in the United States.  The Board expects that the parties will be able to agree upon a reasonable location but will be available to handle the issue, typically via conference call, where the parties are unable to agree.

7.  E-discovery:  The cost of e-discovery in patent infringement cases has led a number of courts to adopt special e-discovery rules.  *See* Federal Rule of Evidence 502.  In the interest of promoting economic and procedural efficiency in these proceedings, the Office adopts a default Model Order Regarding E-Discovery (Appendix C).  Except for routine discovery under the provisions of 37 C.F.R. § 42.51(b)(1), it is expected that the default Model Order will be entered in a proceeding whenever discovery of Electronically Stored Information (ESI) is sought by the parties, whether under the other discovery provisions of 37 C.F.R. § 42.51, or the compelled discovery provisions of 37 C.F.R. § 42.52.  Should a party desire to obtain production of ESI as part of additional discovery under 37 C.F.R. §§ 42.51, 42.52, or any other provision of the rules, the matter should be raised with the Board in a timely

33

fashion before the discovery is scheduled to take place.

## G. Expert Testimony

Expert testimony may be submitted with the petition, preliminary response, and at other appropriate stages in a proceeding as ordered or allowed by the panel overseeing the trial. Expert opinion testimony is generally permitted where the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702(a).

An expert witness must be qualified as an expert by knowledge, skill, experience, training, or education to testify in the form of an opinion. Fed. R. Evid. 702. There is, however, no requirement of a perfect match between the expert's experience and the relevant field. *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1373 (Fed. Cir. 2010). A person may not need to be a person of ordinary skill in the art in order to testify as an expert under Rule 702, but rather must be "qualified in the pertinent art." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363–64 (Fed. Cir. 2008). For example, the absence of an advanced degree in a particular field may not preclude an expert from providing testimony that is helpful to the Board, so long as the expert's experience provides sufficient qualification in the pertinent art.

Expert testimony is presented in the form of an affidavit or declaration. *See* 37 C.F.R. § 42.53(a). Expert testimony may have many uses. For example, it may be used to explain the relevant technology to the panel. It may also be used to establish the level of skill in the

art and describe the person of ordinary skill in the art.  Experts may testify about the

teachings of the prior art and how they relate to the patentability of the challenged claims.

Expert testimony may also be offered on the issue of whether there would have been a reason

to combine the teachings of references in a certain way, or if there may have been a

reasonable expectation of success in doing so.  If evidence of objective indicia of

nonobviousness has been entered into the record, an expert may also provide testimony as to

how this evidence should be weighed against evidence of unpatentability, or may explain the

nature and import of such objective evidence.

The Board has broad discretion to assign weight to be accorded expert testimony.  *Yorkey v.*

*Diab*, 601 F.3d 1279, 1284 (Fed. Cir. 2010).  However, the testimony must be based on

sufficient facts and data.  Fed. R. Evid. 702(b).  "Expert testimony that does not disclose the

underlying facts or data on which the opinion is based is entitled to little or no weight."

37 C.F.R. § 42.65(a).  Furthermore, the testimony must be the product of reliable principles

and methods.  Fed. R. Evid. 702(c).  Moreover, an expert must reliably apply the principles

and methods to the facts of the case.  Fed. R. Evid. 702(d).

The rules governing the conduct of AIA trial proceedings were designed to promote fairness

and efficiency.  For instance, 37 C.F.R. § 42.24(a) sets word limits for petitions, motions, and

replies, and § 42.6(a)(3) prohibits incorporating arguments by reference from one document

into another.  Thus, parties that incorporate expert testimony by reference in their petitions,

motions, or replies without providing explanation of such testimony risk having the

testimony not considered by the Board.  *See Cisco Systems, Inc. v. C-Cation Techs., LLC*, Case IPR2014-00454 (PTAB Aug. 29, 2014) (Paper 12) (informative).

Expert testimony may be presented to establish the scope and content of the prior art for determining obviousness and anticipation.  Such testimony may be helpful in evaluating, for example, the "prior art as viewed with the knowledge of one of skill in the art at the time of invention."  *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1297 (Fed. Cir. 2002). Expert testimony, however, cannot take the place of a disclosure in a prior art reference, when that disclosure is required as part of the unpatentability analysis.  For example, because "[a] claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference,"  *Verdegaal Bros., Inc. v. Union Oil Co. of Cal.*, 814 F.2d 628, 631 (Fed. Cir. 1987), a petitioner asserting anticipation cannot rely on its expert to supply disclosure of a claim element that is not expressly or inherently present in the reference.  Similarly, in an obviousness analysis, conclusory assertions from a third party about general knowledge in the art cannot, without supporting evidence of record, supply a limitation that is not evidently and indisputably within the common knowledge of those skilled in the art.  *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1365 (Fed. Cir. 2014).  Furthermore, because an *inter partes* review may only be requested "on the basis of prior art consisting of patents or printed publications," 35 U.S.C. § 311(b), expert testimony cannot take the place of disclosure from patents or printed publications.  In other words, expert testimony may explain "patents and printed publications," but is not a substitute for disclosure in a prior art reference itself.

## II. Petitions and Motions Practice

### A. General Motions Practice Information

1. <u>Motions practice</u>:  The proceedings begin with the filing of a petition that lays out the petitioner's grounds and supporting evidence for the requested proceeding.  Additional relief in a proceeding must be requested in the form of a motion.  37 C.F.R. § 42.20(a).

2. <u>Prior authorization</u>:  Generally, a motion will not be entered without prior Board authorization.  37 C.F.R. § 42.20(b).  Exceptions include motions where it is impractical for a party to seek prior Board authorization, and motions for which authorization is automatically granted.  Motions where it is not practical to seek prior Board authorization include motions to seal and motions filed with a petition, such as motions to waive word count or page limits.  Motions where authorization is automatically granted, without a conference with the Board, include requests for rehearing and motions to exclude evidence.  The Board expects that the Scheduling Order will pre-authorize and set times for the filing of motions to exclude evidence based on inadmissibility.  *See, e.g.*, Appendix A, Scheduling Order.

Typically, authorization for a motion is obtained during an initial conference call, if requested, which generally occurs within one month of the institution of IPR, PGR, CBM, and derivation proceedings.  Additionally, where more immediate relief is required or the request arises after the initial conference call, a party should request a conference call to obtain such authorization.  Typically, the Board will decide procedural issues raised in a conference call during the call itself or shortly thereafter, thereby avoiding the need for additional briefing.  The Board has found that this practice simplifies a proceeding by

focusing the issues early, reducing costs and efforts associated with motions that are beyond the scope of the proceeding.  By taking an active role in the proceeding, the Board can eliminate delay in the proceeding and ensure that attorneys are prepared to resolve the relevant disputed issues.

3.  <u>Word Count and Page Limits</u>:  A word count limit applies to petitions, patent owner preliminary responses, patent owner responses, and petitioner replies to patent owner responses, and any sur-replies filed in AIA trial proceedings.  For all other briefing, a page limit applies.  37 C.F.R. § 42.24.  The rules set a limit of 14,000 words for petitions requesting IPR and derivation proceedings, and a limit of 18,700 words for petitions requesting PGR and CBM proceedings.  37 C.F.R. § 42.24(a).  Motions, other than motions to amend**,** are limited to 15 pages.  *Id.*  Motions to amend are limited to 25 pages.  *Id.*  Patent owner preliminary responses and patent owner responses to a petition are subject to the same word limits as the corresponding petition.  Oppositions to other motions, including motions to amend, are subject to the same page limits as the corresponding motion.  37 C.F.R. § 42.24(b).  Replies to patent owner responses to petitions are limited to 5,600 words, replies to oppositions to motions to amend are limited to 12 pages, and replies to all other oppositions are limited to 5 pages.  37 C.F.R. § 42.24(c).  Sur-replies, if authorized, are subject to the same word or page limits as the reply, unless the Board orders otherwise.

37 C.F.R. § 42.24(d) requires that any paper whose length is specified by type-volume limits must include a certification stating the number of words in the paper.  In making such a certification, a party may rely on the word count of the word-processing system used to

prepare the paper.  Page and word count limits do not include table of contents, a table of authorities, mandatory notices under 37 C.F.R. § 42.8, a certificate of service, or appendix of exhibits or claim listing; but this exemption from word count limits does not apply to grounds for standing.  *See* 37 C.F.R. § 42.24(a)(1); 81 Fed. Reg. 24,702–03 (April 27, 2016). A party is not required to submit a statement of material facts in its briefing.  37 C.F.R. § 42.22.  Further, double spacing is not required for claim charts.  37 C.F.R. § 42.6(a)(2)(iii).

Federal courts routinely use word count limits to manage motions practice, as "[e]ffective writing is concise writing."  *Spaziano v. Singletary*, 36 F.3d 1028, 1031 n.2 (11th Cir. 1994). Federal courts have found that word count limits ease the burden on both the parties and the courts, and patent cases are no exception.  *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 910 (Fed. Cir. 2014) (explaining that allowing a party to incorporate by reference, resulting in exceeding court's allowable word count would be fundamentally unfair).

Although parties are given wide latitude in how they present their cases, the Board's experience is that the presentation of an overwhelming number of issues tends to detract from the argument being presented, and can otherwise cause meritorious issues to be missed or discounted.  Thus, parties should avoid submitting a repository of all the information that a judge could possibly consider, and instead focus on concise, well-organized, easy-to-follow arguments supported by readily identifiable evidence of record.  Another factor to keep in mind is that judges of the Board are familiar with the general legal principles involved in issues which come before the Board.  Accordingly, unless there is a dispute over the applicable law, extended discussions of general patent law principles may not be necessary.

39

The Office provides the following practical guidance regarding compliance with the word count limits.  With a word count limit, parties may include concise arguments in claim charts if they choose.  Moreover, when certifying word count, a party need not go beyond the routine word count supplied by their word processing program.  Parties should not abuse the process.  Excessive words in figures, drawings, or images, deleting spacing between words, or using excessive acronyms or abbreviations for word phrases, in order to circumvent the rules on word count, may lead to a party's brief not being considered.  *See, e.g.*, *Pi-Net Int'l, Inc. v. JPMorgan Chase & Co.*, 600 F. App'x 774 (Fed. Cir. 2015).  Except in cases of obvious abuse, the Board will generally accept a party's certification of compliance with word count limits.  If a party feels that it would suffer undue prejudice from an opposing party's alleged word count limit violation or abuse, that party should raise the issue with the Board promptly after discovering the issue.  The Board expects the parties to take reasonable steps to remedy any such issues before approaching the Board.  If an opposing party raises a word count limit violation or abuse, the Board will consider such a violation or abuse on a case-by-case basis.

4.  Testimony Must Disclose Underlying Facts or Data:  The Board expects that most petitions and motions will rely upon affidavits of experts.  Affidavits expressing an opinion of an expert must disclose the underlying facts or data upon which the opinion is based.  *See* Fed. R. Evid. 705; 37 C.F.R. § 42.65.  Opinions expressed without disclosing the underlying facts or data may be given little or no weight.  *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) (nothing in the Federal Rules of Evidence or

Federal Circuit jurisprudence requires the fact finder to credit unsupported assertions of an expert witness).

5. <u>Tests and Data</u>:  Parties often rely on scientific tests and data to support their positions. Examples include infrared spectroscopy graphs, high-performance liquid-chromatography data, etc.  In addition to providing the explanation required in 37 C.F.R. § 42.65, a party relying on a test or data should provide any other information the party believes would assist the Board in understanding the significance of the test or the data.

6. <u>Objective Indicia of Nonobviousness</u>:  The Board expects that most petitions will raise issues of obviousness.  In determining whether the subject matter of a claim would have been obvious over the prior art, the Board will review any objective evidence of nonobviousness proffered by the patent owner where appropriate.

**B.  Petition**

Proceedings begin with the filing of a petition.  The petition lays out the petitioner's grounds for review and supporting evidence, on a claim-by-claim basis, for instituting the requested proceeding.

1. <u>Filing date – Minimum Procedural Compliance</u>:  To obtain a filing date, the petition must meet certain minimum standards.  *See, e.g.*, 37 C.F.R. § 42.106.  Generally, the standards required for a petition are those set by statute for the proceeding requested.  *See, e.g.*, 35 U.S.C. § 312(a).  For example, an IPR requires that a complete petition be filed with the

41

required fee, and include a certificate of service for the petition, fee, and evidence relied upon.  37 C.F.R. § 42.106.  A complete petition for IPR requires that the petitioner certify that the patent is eligible for IPR and that the petitioner is not barred or estopped from requesting the review, and that the petitioner identify the claims being challenged and the specific basis for the challenge.  37 C.F.R. § 42.104.  Similar petition requirements apply to PGR (37 C.F.R. § 42.204) and derivations (37 C.F.R. § 42.404).  CBM proceedings also require a petition demonstrate that the patent for which review is sought is a covered business method patent.  37 C.F.R. § 42.304.

2.  <u>Burden of Proof for Statutory Institution Thresholds</u>:  The burden of proof in a proceeding before the Board is a preponderance of the evidence standard.  37 C.F.R. § 42.1(d).

3.  <u>Specific Requirements for Petition</u>:  A petitioner must certify that the patent or application is available for review and that the petitioner is not barred or estopped from seeking the proceeding.  37 C.F.R. §§ 42.104, 42.204, 42.304, 42.405.  Additionally, a petitioner must identify each claim that is challenged and the specific statutory grounds on which each challenge to the claim is based, provide a claim construction for the challenged claims, and state the relevance of the evidence to the issues raised.  *Id*.  For IPR, PGR, and CBM proceedings, a petitioner must also identify how the construed claim is unpatentable over the relevant evidence.  37 C.F.R. §§ 42.104(b), 42.204(b), 42.304(b).

4.  <u>Covered Business Method/Technological Invention</u>:  A petitioner in a CBM proceeding must demonstrate that the patent for which review is sought is a covered business method

42

patent.  37 C.F.R. § 42.304(a).  Covered business method patents by definition do not include patents for technological inventions.

The following claim drafting techniques would not typically render a patent a technological invention:

>(a) Mere recitation of known technologies, such as computer hardware, communication or computer networks, software, memory, computer-readable storage medium, scanners, display devices or databases, or specialized machines, such as an ATM or point of sale device.

>(b) Reciting the use of known prior art technology to accomplish a process or method, even if that process or method is novel and non-obvious.

>(c) Combining prior art structures to achieve the normal, expected, or predictable result of that combination.

The following are examples of covered business method patents that are subject to a CBM review proceeding:

>(a) A patent that claims a method for hedging risk in the field of commodities trading.

>(b) A patent that claims a method for verifying validity of a credit card transaction.

The following are examples of patents that claim a technological invention that would not be

43

subject to a CBM review proceeding:

> (a) A patent that claims a novel and non-obvious hedging machine for hedging risk in the field of commodities trading.

> (b) A patent that claims a novel and non-obvious credit card reader for verifying the validity of a credit card transaction.

5. <u>Claim Charts</u>:  While not required, a petitioner may file a claim chart to explain clearly and succinctly what the petitioner believes a claim means in comparison to something else, such as another claim, a reference, or a specification.  Where appropriate, claim charts can streamline the process of identifying key features of a claim and comparing those features with specific evidence.  Claim charts submitted as part of a petition, motion, patent owner preliminary response, patent owner response, opposition, or reply count towards applicable word count limits, but are not required to be double-spaced.  A claim chart from another proceeding that is submitted as an exhibit, however, will not count towards word count limits.

6. <u>Claim Construction</u>:  If a petitioner believes that a claim term requires an express construction, the petitioner must include a statement identifying a proposed construction of the particular term and where the intrinsic and/or extrinsic evidence supports that meaning. On the other hand, a petitioner may include a statement that the claim terms require no express construction. The patent owner may then respond to these positions and/or propose additional terms for construction, with corresponding statements identifying a proposed construction of any particular term or terms and where the intrinsic and/or extrinsic evidence

supports those meanings.  The petitioner may respond to any such new claim construction issues raised by the patent owner, but cannot raise new claim construction issues that were not previously raised in its petition.  If the Board raises a claim construction issue on its own, both parties will be afforded an opportunity to respond before a final written decision is issued.  *See, e.g.*, *Hamilton Beach Brands, Inc. v. f'real Foods, LLC*, 908 F.3d 1328, 1339 (Fed. Cir. 2018) (citing *SAS Inst., Inc. v. ComplementSoft, LLC.*, 825 F.3d 1341, 1351 (Fed. Cir. 2016), *reversed on other grounds*, *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1351 (2018)) (finding that the Board did not violate the Administrative Procedure Act when it adopted its own claim construction in the final written decision because the parties had notice of the contested claim construction and an opportunity to be heard).

Where claim language may be construed according to 35 U.S.C. § 112(f), a petitioner must provide a construction that includes both the claimed function and the specific portions of the specification that describe the structure, material, or acts corresponding to each claimed function.  37 C.F.R. § 42.104(b)(3).  A party may choose to elaborate why § 112(f) should or should not apply to the limitation at issue.  *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).  A petitioner who chooses not to address construction under § 112(f) risks failing to satisfy the requirement of 37 C.F.R. § 42.104(b)(3).

The Office has revised the claim construction standard used in IPR, PGR, and CBM proceedings, and now applies the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. § 282(b).  *See Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the Patent Trial*

45

*and Appeal Board*, 83 Fed. Reg. 51,340 (Oct. 11, 2018) (Final Rule) (applying to all IPR, PGR and CBM petitions filed on or after November 13, 2018).  This is the same claim construction standard used by Article III federal courts and the ITC, which follow *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) and its progeny.  The amended rules (37 C.F.R. §§ 42.100(b), 42.200(b), and 42.300(b)) reflect that in an AIA proceeding, the Board will apply the same standard used in federal courts to construe patent claims.  The Board will construe patent claims and proposed substitute claims based on the record of the IPR, PGR, or CBM proceeding, taking into account the claim language itself, specification, and prosecution history pertaining to the patent, as well as relevant extrinsic evidence, all as in prevailing jurisprudence of Article III courts.  The Board will also take into account the prosecution history that occurred previously in proceedings at the Office prior to the IPR, PGR, or CBM proceeding at issue, including in another AIA proceeding, or before an examiner during examination, reissue, and reexamination.

The Board will determine the claim construction based on the record of the proceeding at issue.  Thus, as in a district court proceeding, the parties should point out the specific portions of the specification, prosecution history, and relevant extrinsic evidence they want considered, and explain the relevancy of any such evidence to the arguments they advance. Each party bears the burden of providing sufficient support for any construction advanced by that party.

The claim construction rule also provides that "[a]ny prior claim construction determination concerning a term of the claim in a civil action, or a proceeding before the International

Trade Commission, that is timely made of record in the . . . proceeding will be considered." 37 C.F.R. §§ 42.100(b), 42.200(b), 42.300(b).  Under this provision, the Board will consider any prior claim construction determination in a civil action or ITC proceeding if a federal court or the ITC has previously construed a term of the involved claim using the same standard, and the claim construction determination has been timely made of record in the IPR, PGR, or CBM proceeding.  The Board will give such other claim construction determinations appropriate weight.  Non-exclusive factors considered by the Board when determining appropriate weight may include, for example, the similarities between the record in the district court or the ITC and the record before the Board.  It may also be relevant whether the prior claim construction is final or interlocutory.  These factors will continue to be relevant under the district court claim construction standard, which is articulated in *Phillips*.  The Board may also consider whether the terms construed by the district court or ITC are necessary to deciding the issues before it.  This is not an exclusive list of considerations, and the facts and circumstances of each case will be analyzed as appropriate.

Parties should submit a prior claim construction determination by a federal court or the ITC in an AIA proceeding as soon as that determination becomes available.  Preferably, the prior claim construction determination should be submitted with the petition, preliminary response, or response, along with explanations.  Submission of a prior claim construction determination is mandatory under 37 C.F.R. § 42.51(b), if it is "relevant information that is inconsistent with a position advanced by the party during the proceeding."  In such cases, the determination should be submitted "concurrent with the filing of the documents or things that contains the inconsistency."  37 C.F.R. § 42.51(b).  After a trial is instituted, the Board's

47

rules on supplemental information govern the timing and procedures for submitting claim construction decisions.  37 C.F.R. §§ 42.123, 42.223.  Under those rules, a party must first request authorization from the Board to file a motion to submit supplemental information.  If it is more than one month after the date the trial is instituted, the motion must show why the supplemental information reasonably could not have been obtained earlier.  Normally, the Board will permit such information to be filed, as long as the final oral hearing has not taken place.  The Board may permit a later filing where it is not close to the one-year deadline for completing the trial.  Again, parties should submit a prior claim construction as soon as the decision is available.

The Board, in its claim construction determinations, will consider statements regarding claim construction made by patent owners and by a petitioner filed in other proceedings, if the statements are timely made of record.  *Cf. Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360–61 (Fed. Cir. 2017) (extending the prosecution disclaimer doctrine to include patent owner's statements made in a preliminary response that was submitted in a prior AIA proceeding).  To the extent that a party wants such information to be considered by the Board, that party should point out specifically the statements and explain how those statements support or contradict a party's proposed claim construction in the proceeding at issue.  Each party bears the burden of providing sufficient support for any construction advanced by that party.  Furthermore, the Board may take into consideration statements made by a patent owner or petitioner about claim scope, such as those submitted under 35 U.S.C. § 301(a), for example.

The petitioner and patent owner have opportunities, during the preliminary stage, to submit their proposed claim constructions (in a petition and preliminary response, respectively) and any supporting evidence, including both intrinsic and extrinsic evidence. Upon consideration of the parties' proposed claim constructions and supporting evidence, the Board will provide an initial claim construction determination in the institution decision, to the extent that such construction is required to resolve the disputes raised by the parties. If a trial is instituted, the parties also will have opportunities to cross-examine any opposing declarants, and to submit additional arguments and evidence, addressing the Board's initial claim construction determination and the opposing party's arguments and evidence before oral hearing. The Board also will consider the entirety of the trial record, including the claim language itself, the specification, prosecution history pertaining to the patent, extrinsic evidence as necessary, and any prior claim construction determinations from the federal courts and ITC that have timely been made of record, before entering a final written decision that sets forth the final claim construction determination. All parties will have a full and fair opportunity to present arguments and evidence prior to any final determination.

### C.  Patent Owner Preliminary Response

For IPR, PGR, and CBM proceedings, a patent owner may file a preliminary response within three months after the Notice of Filing Date Accorded to Petition. 37 C.F.R. §§ 42.107(b), 42.207(b). The preliminary response may present arguments and supporting evidence (including testimonial evidence) to demonstrate that no review should be instituted. 37 C.F.R. §§ 42.107(a), 42.207(a). For example, a patent owner preliminary response may include one or more of the following arguments:

49

(1) The petitioner is statutorily barred from pursuing a review;

(2) The references asserted to establish that the claims are unpatentable are not in fact printed publications;

(3) The prior art lacks a material limitation in a challenged claim;

(4) The prior art does not teach or suggest a combination that the petitioner is advocating;

(5) The petitioner's claim interpretation for the challenged claims is unreasonable;

(6) If a PGR or CBM petition raises 35 U.S.C. § 101 grounds, a brief explanation as to how the challenged claims are directed to a patent-eligible invention; or

(7) Reasons why the Director should exercise his or her discretion and deny institution under 35 U.S.C. § 314 and/or § 325(d).


Testimonial evidence is permitted to be submitted with a preliminary response.  "[B]ut, a genuine issue of material fact created by such testimonial evidence will be viewed in the light most favorable to the petitioner solely for purposes of deciding whether to institute [a review]."  37 C.F.R. §§ 42.108(c), 42.208(c).  This allows the petitioner to have an opportunity to cross-examine the declarant during the trial.  No negative inference will be drawn if a patent owner decides not to present testimonial evidence with a preliminary response.


Not every factual contradiction rises to the level of a genuine issue of material fact at the preliminary stage of a proceeding.  As the Federal Circuit has recognized, "[t]he mere existence in the record of dueling expert testimony does not necessarily raise a genuine issue

of material fact." *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325–26 (Fed. Cir. 2016) (citing *KTEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1374–76 (Fed. Cir. 2012) (affirming grant of summary judgment that design patent was not analogous art, despite contrary opinion in expert report); *Minkin v. Gibbons, P.C.*, 680 F.3d 1341, 1351–52 (Fed. Cir. 2012) (indicating that summary judgment of invalidity may be available notwithstanding expert report supporting validity)).

The weight to be given testimonial evidence submitted with the preliminary response in reaching the final written decision will be decided on a case-by-case basis. In general, a party has the opportunity to cross-examine a witness providing declaration testimony submitted by another party, after institution, unless the Board orders otherwise. 37 C.F.R. § 42.51(b)(1)(ii). If a trial is instituted, a patent owner may choose not to rely on testimony submitted with the preliminary response. In that case, the patent owner should advise the Board of its decision, which can be done by affirmatively withdrawing the testimony in the patent owner response. If a patent owner withdraws a declaration submitted with its preliminary response, that declarant will usually not be subject to deposition on the withdrawn declaration. If, on the other hand, the patent owner does not withdraw a declaration submitted with its preliminary response, that declaration may be relied upon during the trial, and the declarant would usually be subject to discovery and deposition in the ordinary course of the trial.

Submission of patent owner testimonial evidence at the preliminary stage may warrant granting the petitioner a reply to such evidence. A petitioner may seek leave to file a reply to

the preliminary response in accordance with 37 C.F.R. §§ 42.23, 42.24(c).  37 C.F.R. §§ 42.108(c), 42.208(c).  Any such request must make a showing of good cause.  The decision concerning whether the petitioner will be afforded a reply and the appropriate scope of such a reply rests with the panel deciding the proceeding to take into account the specific facts of the particular case.  However, the Board does not expect that such a reply will be granted in many cases due to the short time period the Board has to reach a decision on institution.

Where a patent owner seeks to expedite the proceeding, the patent owner may file an election to waive the patent owner preliminary response.  37 C.F.R. §§ 42.107(b), 42.207(b).  No adverse inference will be taken by such an election.  Moreover, a patent owner may file a statutory disclaimer of one or more challenged claims to streamline the proceedings.  Where no challenged claims remain, the Board would terminate the proceeding.  Where one or more challenged claims remain, the Board's decision on institution would be based solely on the remaining claims.  *See Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1315 (Fed. Cir. 2016); *Sony Computer Entm't Am. Inc. v. Dudas*, 2006 WL 1472462 (E.D. Va. May 22, 2006).

Once a trial is instituted, the Board may decline to consider arguments set forth in a preliminary response unless they are raised in the patent owner response.  *See In re Nuvasive, Inc.*, 842 F.3d 1376, 1381 (Fed. Cir. 2016) (explaining that a patent owner waives an issue presented in its preliminary response if it fails to renew the issue in its response after trial is instituted).

**D. Institution of Trial**

1. <u>Statutory Threshold Standards</u>:  Generally, the Director may institute a proceeding where a petitioner meets the threshold standards.  There is a different statutory threshold standard for institution of each type of proceeding.  Each of the statutory threshold standards is summarized below.

(a) <u>*Inter Partes* Review</u>:  35 U.S.C. § 314(a) provides that the Director may not authorize institution of an *inter partes* review, unless the Director determines that the information presented in the petition filed under 35 U.S.C. § 311, and any response filed under 35 U.S.C. § 313, shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least one of the claims challenged in the petition.  The "reasonable likelihood" standard is a somewhat flexible standard that allows the Board room to exercise judgment.

(b) <u>Post-Grant Review</u>:  35 U.S.C. § 324(a) provides that the Director may not authorize institution of a post-grant review, unless the Director determines that the information presented in the petition filed under 35 U.S.C. § 321, if such information is not rebutted, would demonstrate that it is more likely than not that at least one of the claims challenged in the petition is unpatentable.  The "more likely than not" standard requires greater than 50% chance of prevailing.  In addition, 35 U.S.C. § 324(b) provides that the determination required under 35 U.S.C. § 324(a) may also be satisfied by a showing that the petition raises a novel or unsettled legal question

that is important to other patents or patent applications.

(c) <u>Covered Business Method Patent Review</u>:  Section 18(a)(1) of the AIA provides that the transitional proceeding for covered business method patents will be regarded as, and will employ the standards and procedures of, a post-grant review under chapter 32 of title 35 United States Code, subject to certain exceptions.

Section 18(a)(1)(B) of the AIA specifies that a person may not file a petition for a transitional proceeding with respect to a covered business method patent unless the person or person's real party-in-interest or privy has been sued for infringement of the patent or has been charged with infringement under that patent.  A covered business method patent means a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions.

(d) <u>Derivation</u>:  35 U.S.C. § 135(a) provides that an applicant for a patent may file a petition to institute a derivation proceeding.  35 U.S.C. § 135(a) provides that the petition must state with particularity the basis for finding that a named inventor in the earlier application derived the claimed invention from an inventor named in the petitioner's application and, without authorization, filed the earlier application.  The petition must be filed within one year of the first publication by the earlier applicant of a claim to the same or substantially the same invention, must be made under oath, and must be supported by substantial evidence.  35 U.S.C. § 135(a) also provides that

the Director may institute a derivation proceeding, if the Director determines that the

petition demonstrates that the standards for instituting a derivation proceeding are

met.


2.  <u>Considerations in Instituting a Review</u>:  The Board institutes the trial on behalf of the

Director.  37 C.F.R. § 42.4(a).  In deciding whether to institute the trial, the Board considers

at a minimum whether or not a party has satisfied the relevant statutory institution standard.

The Board will also take into account whether various considerations, including those

discussed below, warrant the exercise of the Director's discretion to decline to institute

review.  *See, e.g.*, 35 U.S.C. §§ 314(a), 324(a).  Among other things, the Board will also take

into account whether the same or substantially the same prior art or arguments were

previously presented to the Office.  *See, e.g.*, 35 U.S.C. § 325(d).


<u>35 U.S.C. §§ 314(a), 324(a)</u>.  Sections 314(a) and 324(a) provide the Director with discretion

to deny a petition.  *See* 35 U.S.C. § 314(a) (stating "[t]he Director may not authorize an *inter

partes* review to be instituted unless . . .");  *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct.

2131, 2140 ("[T]he agency's decision to deny a petition is a matter committed to the Patent

Office's discretion.").  Under 35 U.S.C. § 316(a)(2), the Director shall prescribe regulations

"setting forth the standards for the showing of sufficient grounds to institute a review under

section 314(a)."  Once instituted, "[petitioner] is entitled to a final written decision

addressing all of the claims it has challenged."  *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348,

1359 (2018).

The Director's discretion is informed by 35 U.S.C. §§ 316(b) and 326(b), which require the Director to "consider the effect of any such regulation [under this section] on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter."  The AIA was "designed to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs."  H.R. Rep. No. 112–98, pt. 1, at 40 (2011), 2011 U.S.C.C.A.N. 67, 69 (Post grant reviews were meant to be "quick and cost effective alternatives to litigation"); *see also* S. Rep. No. 110–259, at 20 (2008).  In *General Plastic Co., Ltd. v. Canon Kabushiki Kaisha*, the Board recognized these goals of the AIA, but also "recognize[d] the potential for abuse of the review process by repeated attacks on patents."  IPR2016-01357, slip op. 16–17 (PTAB Sept. 6, 2017) (Paper 19) (precedential).

Accordingly, to aid the Board's assessment of "the potential impacts on both the efficiency of the *inter partes* review process and the fundamental fairness of the process for all parties," *General Plastic* enumerated a number of non-exclusive factors that the Board will consider in exercising discretion on instituting *inter partes* review, especially as to "follow-on" petitions challenging the same patent as challenged previously in an IPR, PGR, or CBM proceeding.  *Id.* at 18.  The *General Plastic* non-exclusive factors include the following:

1. whether the same petitioner previously filed a petition directed to the same claims of the same patent;[1]

2. whether at the time of filing of the first petition the petitioner knew of the prior art asserted in the second petition or should have known of it;

3. whether at the time of filing of the second petition the petitioner already received the patent owner's preliminary response to the first petition or received the Board's decision on whether to institute review in the first petition;

4. the length of time that elapsed between the time the petitioner learned of the prior art asserted in the second petition and the filing of the second petition;

5. whether the petitioner provides adequate explanation for the time elapsed between the filings of multiple petitions directed to the same claims of the same patent;

6. the finite resources of the Board; and

7. the requirement under 35 U.S.C. § 316(a)(11) to issue a final determination not later than 1 year after the date on which the Director notices institution of review.

*Id.* at 15–16.

---

[1] Since *General Plastic*, the Board has held that the application of the first *General Plastic* factor is not limited to instances where multiple petitions are filed by the same petitioner. *See Valve Corp. v. Elec. Scripting Prods., Inc.*, Case IPR2019-00062, -00063, -00084 (PTAB Apr. 2, 2019) (Paper 11) (precedential) (denying institution when a party filed follow-on petitions for *inter partes* review after the denial of an *inter partes* review request of the same claims filed by the party's co-defendant). When different petitioners challenge the same patent, the Board considers the relationship, if any, between those petitioners when weighing the *General Plastic* factors. *Id.*

The *General Plastic* factors, alone or in combination, are not dispositive, but part of a balanced assessment of all relevant circumstances in the case, including the merits. *Id.* at 15 ("There is no *per se* rule precluding the filing of follow-on petitions."). The *General Plastic* factors are also not exclusive and are not intended to represent all situations where it may be appropriate to deny a petition. *Id.* at 16. There may be other reasons besides the "follow-on" petition context where the "effect . . . on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings," 35 U.S.C. § 316(b), favors denying a petition even though some claims meet the threshold standards for institution under 35 U.S.C. §§ 314(a), and 324(a). This includes, for example, events in other proceedings related to the same patent, either at the Office, in district courts, or the ITC.[2] *See NetApp, Inc. v. Realtime Data LLC*, Case IPR2017-01195, slip op. at 12–13 (PTAB Oct. 12, 2017) (Paper 9) (denying institution under 35 U.S.C. § 314(a) of a follow-on petition filed by a different petitioner where, due to petitioner's delay, the Board likely would not have been able to rule on patentability until after the district court trial date). Accordingly, parties may wish to address in their submissions whether any other such reasons exist in their case that may give rise to additional factors that may bear on the Board's discretionary decision to institute or not institute, and whether and how such factors should be considered along with the *General Plastic* factors.

---

[2] For example, in *NHK Spring Co., Ltd. v. Intri-Plex Techs., Inc.*, Case IPR2018-00752 (PTAB Sept. 12, 2018) (Paper 8) (precedential), the Board denied institution under 35 U.S.C. § 325(d). The Board also found that the advanced state of a parallel district court proceeding was an additional factor weighing in favor of denying institution under § 314(a). *Id.* at 19–20. Specifically, the Board noted the district court proceeding involved the same prior art and arguments, had already construed claim terms, and was set for trial six months before the Board would complete its own proceeding. *Id.*

<u>Parallel Petitions Challenging the Same Patent</u>.  Based on the Board's experience, one petition should be sufficient to challenge the claims of a patent in most situations.  Two or more petitions filed against the same patent at or about the same time (e.g., before the first preliminary response by the patent owner) may place a substantial and unnecessary burden on the Board and the patent owner and could raise fairness, timing, and efficiency concerns. *See* 35 U.S.C. § 316(b).  In addition, multiple petitions by a petitioner are not necessary in the vast majority of cases.  To date, a substantial majority of patents have been challenged with a single petition.

Nonetheless, the Board recognizes that there may be circumstances in which more than one petition may be necessary, including, for example, when the patent owner has asserted a large number of claims in litigation or when there is a dispute about priority date requiring arguments under multiple prior art references.  In such cases two petitions by a petitioner may be needed, although this should be rare.  Further, based on prior experience, the Board finds it unlikely that circumstances will arise where three or more petitions by a petitioner with respect to a particular patent will be appropriate.

To aid the Board in determining whether more than one petition is necessary, if a petitioner files two or more petitions challenging the same patent, then the petitioner should, in its

petitions or in a separate paper filed with the petitions,[3] identify: (1) a ranking of the petitions in the order in which it wishes the Board to consider the merits, if the Board uses its discretion to institute any of the petitions, and (2) a succinct explanation of the differences between the petitions, why the issues addressed by the differences are material, and why the Board should exercise its discretion to institute additional petitions if it identifies one petition that satisfies petitioner's burden under 35 U.S.C. § 314(a).  The Board encourages the petitioner to use a table to aid in identifying the similarities and differences between petitions.[4]

If the petitioner provides this information, the patent owner could, in its preliminary responses or in a separate paper filed with the preliminary responses,[5] respond to the petitioner and explain why the Board should not exercise its discretion to institute more than

---

[3] A separate paper filed with the petitions is limited to providing this explanation and shall be no more than 5 pages where the same paper is filed with each petition.

[4] Prior to the issuance of this guide, a panel requested from the petitioner and patent owner an additional paper after the patent owner preliminary response to address these issues.  *See Comcast Cable Commc'ns, LLC v. Rovi Guides, Inc.*, Case IPR2019-00224, -00225, -00226, -00227, -00228, -00229 (PTAB April 3, 2019) (Paper 10).  Panels may continue to authorize such papers for petitions submitted before the publication of this guide.  After the publication of this guide, it will be expected that petitioners will justify multiple petitions in the first instance in their petitions or in a separate paper with the petitions, and patent owners will respond in their preliminary responses or in a separate paper with their preliminary responses.

[5] A separate paper filed with the preliminary responses is limited to providing this explanation and shall be no more than 5 pages where the same paper is filed with each preliminary response.

one petition (if it institutes at all).  Among other issues, the patent owner should explain

whether the differences identified by the petitioner are directed to an issue that is not material

or not in dispute.  If stating that issues are not material or in dispute, the patent owner should

clearly proffer any necessary stipulations.  For example, the patent owner may seek to avoid

additional petitions by proffering a stipulation that certain claim limitations are not disputed

or that certain references qualify as prior art.  The Board will consider the parties'

submissions in determining whether to exercise its discretion to institute *inter partes* review

under 35 U.S.C. § 314(a).


35 U.S.C. § 325(d).  35 U.S.C. § 325(d) provides that, in determining whether to order a

reexamination or institute an IPR, PGR, or CBM proceeding, the Director may take into

account whether, and reject the petition or request because, the same or substantially the

same prior art or arguments previously were presented to the Office.  Thus, in exercising its

discretion whether to institute trial, the Board considers whether the same or substantially the

same prior art or arguments were presented previously.  *See, e.g.*, *Cultec, Inc. v. StormTech

LLC*, Case IPR2017-00777 (PTAB Aug. 22, 2017) (Paper 7) (informative) (denying

institution under 35 U.S.C. § 325(d) where the Office previously evaluated two asserted

references during examination and additional relied- upon references were cumulative of

prior art considered during examination); *Hospira, Inc. v. Genentech, Inc.*, Case IPR2017-

00739 (PTAB July 27, 2017) (Paper 16) (informative) (denying institution under 35 U.S.C.

§ 325(d) where the Office previously considered and evaluated during examination the same

arguments regarding a patent owner's priority claim).

Whether to deny institution of trial on the basis of 35 U.S.C. § 325(d) is a fact-dependent decision, in which the Board balances the petitioner's desire to be heard against the interest of the patent owner in avoiding duplicative challenges to its patent. The Board also takes into account the "efficient administration of the Office," *see* 35 U.S.C. § 316(b), which may be affected by consideration of trial petitions that raise the same or substantially the same prior art or arguments presented previously to the Office during examination, a reexamination proceeding, a reissue proceeding, or in an earlier-filed petition requesting an IPR, PGR, or CBM review.

In evaluating whether to deny institution on the basis of 35 U.S.C. § 325(d), the Board has considered certain non-exclusive factors. *See Becton Dickinson & Co. v. B. Braun Melsungen AG*, Case IPR2017-01586, slip op. at 17–18 (PTAB Dec. 15, 2017) (Paper 8) (precedential in relevant part). The *Becton Dickinson* non-exclusive factors include:

1. the similarities and material differences between the asserted art and the prior art involved during examination;

2. the cumulative nature of the asserted art and the prior art evaluated during examination;

3. the extent to which the asserted art was evaluated during examination;

4. the extent of the overlap between the arguments made during examination and the manner in which a petitioner relies on the prior art or a patent owner distinguishes the prior art;

5. whether a petitioner has pointed out sufficiently how the Office erred in evaluating the asserted prior art; and

6.  the extent to which additional evidence and facts presented in the petition warrant reconsideration of the prior art or arguments.

*Id.*

Although the Board has considered the above-listed factors in the context of a trial petition that raises art that is the same or substantially the same as art presented previously during examination, parties to a IPR, PGR, or CBM proceeding may wish to analyze similar factors in the context of a trial petition involving art that is the same or substantially the same as art presented previously during a prior reexamination proceeding, a reissue proceeding, or an earlier-filed petition requesting an IPR, PGR, or CBM review.  In deciding whether to deny institution under 35 U.S.C. § 325(d), the Board may also consider materially changed circumstances or facts and evidence of which the Office was not aware during its previous consideration of the asserted art or arguments.  *Kayak Software Corp. v. Int'l Bus. Machs. Corp.*, Case CBM2016-00075, slip op. at 10–12 (PTAB Dec. 15, 2016) (Paper 16) (informative).  The above-listed factors are not exclusive—the parties may wish to address additional factors they consider relevant to the Board's exercise of discretion to deny institution under 35 U.S.C. § 325(d).

The above-listed factors are considered by the Board when determining whether to institute a trial.  When determining whether to order ex parte reexamination, however, the Office may not necessarily consider these factors.  An *ex parte* reexamination proceeding is not a trial proceeding, and the considerations with respect to issues involving 35 U.S.C. § 325(d) may differ due to the different nature of an *ex parte* reexamination proceeding.

3.  <u>Content of Decision on Whether to Institute</u>:  In instituting a trial, the Board will either (1) institute as to all claims challenged in the petition and on all grounds in the petition, or (2) institute on no claims and deny institution.  The Board will not institute on fewer than all claims or all challenges in a petition.  *See SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348, 1359–60 (2018); *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1359–62 (Fed. Cir. 2018); and *Adidas AG v. Nike, Inc.*, 894 F.3d 1256, 1258 (Fed. Cir. 2018).  If a trial is instituted, the Board generally will provide analysis of the strengths and weaknesses of all challenges in the petition in order to provide guidance to the parties for the upcoming trial.  The Board retains the discretion to deny institution of the petition as a whole under 35 U.S.C. §§ 314(a) and 325(d) under appropriate circumstances, even when the petition includes at least one claim subject to a challenge that otherwise meets the criteria for institution.  *See Deeper, UAB v. Vexilar, Inc.*, Case IPR2018-01310 (PTAB Jan. 24, 2019) (Paper 7) (informative); *Chevron Oronite Co. v. Infineum USA L.P.*, Case IPR2018-00923 (PTAB Nov. 7, 2018) (Paper 9) (informative).  If a panel determines that a petition meets the standards for institution in relation to fewer than all the challenges presented, or where deficiencies in the petition (such as a failure to provide a construction under 35 U.S.C. § 112(f)) affect only a portion of the challenges presented, the panel will evaluate all the challenges and determine whether, in the interests of efficient administration of the Office and integrity of the patent system, the entire petition should be denied.  *See* 37 C.F.R. §§ 316(b), 326(b).

Where no trial is instituted, a decision to that effect will be provided.  The Board expects that the decision will contain a short statement as to why the standards were not met, although

this may not be necessary in all cases.  A party dissatisfied with a decision whether or not to institute may file a request for rehearing before the Board, but the Board's determination on whether to institute a trial is final and nonappealable.  35 U.S.C. §§ 135(a), 314(d), § 324(e); 37 C.F.R. §§ 42.71(c), (d).

4. <u>Scheduling Order</u>:  The Board expects that a Scheduling Order (*see, e.g.*, Appendix A) will be provided concurrent with the decision to institute the proceeding.  The Scheduling Order will set due dates for taking action accounting for the complexity of the proceeding but ensuring that the trial is completed within one year of institution.  Furthermore, the parties may request changes to the due dates by requesting a conference call with the Board, and stipulate different dates for Due Dates 1 through 5 (earlier or later, but no later than Due Date 6).  *See* Appendix A.  The parties may not stipulate an extension of DUE DATES 6 and 7, or to the requests for oral hearing.

**E.  Initial Conference Call (One Month after Instituting Trial, if Requested)**

The parties may request a conference call within about one month from the date of institution of the trial to discuss the Scheduling Order and any motions that the parties anticipate filing during the trial.

**F.  Patent Owner Response**

For IPR, PGR, and CBM, the patent owner will be provided an opportunity to respond to the petition once a trial has been instituted.  35 U.S.C. §§ 316(a)(8), 326(a)(8).  For a derivation proceeding, the applicant or patent owner alleged to have derived the invention will be

provided an opportunity to respond to the petition once the trial has been instituted.  35 U.S.C. § 135(b).

The patent owner response is filed as an opposition to the petition and is subject to the word count limits provided in 37 C.F.R. § 42.24.  37 C.F.R. §§ 42.120, 42.220.  The response should identify all the involved claims that are believed to be patentable and state the basis for that belief.  Additionally, the response should include any affidavits or additional factual evidence sought to be relied upon and explain the relevance of such evidence.  As with the petition, the response may contain a claim chart identifying key features of a claim and comparing those features with specific evidence.  Where the patent owner elects not to file a response, the patent owner will arrange for a conference call with the Board to discuss whether or not the patent owner will file a request for adverse judgement.  37 C.F.R. § 42.73(b).

### G.  Motions to Amend

1.  <u>IPR, PGR, and CBM Amendments</u>:  Patent owners in IPR, PGR, and CBM proceedings may file motions to amend the claims subject to certain conditions.  37 C.F.R. §§ 42.20, 42.121, 42.221.

<u>Motion to Amend</u>.  Although patent owners may file a first motion to amend and need not obtain prior Board authorization, the patent owner is still required to confer with the Board before filing the motion.  37 C.F.R. §§ 42.121(a), 42.221(a).  During a conference call or by email communication, the panel will provide procedural guidance to the patent owner and

66

petitioner regarding the motion.  Patent owners are encouraged to contact the Board to arrange a conference call as early as possible after deciding to file a motion to amend, to allow time for any discussion or guidance provided during the conference call to be incorporated into the motion.

Motion to Amend Practice.  The motion to amend practice is currently under review by the Office.  On March 15, 2019, the Office issued a notice of a pilot program for motion to amend practice and procedures that provides the patent owner with additional options regarding the motion to amend process.  These options include (1) requesting preliminary guidance from the Board in its first motion to amend, and (2) filing a revised motion to amend.  *See Notice Regarding a New Pilot Program Concerning Motion to Amend Practice and Procedures in Trial Proceedings Under the America Invents Act Before the Patent Trial and Appeal Board*, 84 Fed. Reg. 9497 (Mar. 15, 2019).  Further information on current motion to amend practice may be found at the following website: https://www.uspto.gov/patents-application-process/patenttrialandappealboard.

Due Date.  A motion to amend must be filed no later than the time period for filing a patent owner response, unless a different due date is provided in a Board order.  37 C.F.R. §§ 42.121(a), 42.221(a).

Evidentiary Standards.  On October 4, 2017, the U.S. Court of Appeals for the Federal Circuit issued an en banc decision in *Aqua Products, Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017).  In the decision containing five separate opinions, the court addressed the burden of

persuasion that the Board applies when considering the patentability of substitute claims presented in a motion to amend filed under 35 U.S.C. § 316(d) in an IPR.  The lead opinion concludes with the following.

> The only legal conclusions that support and define the judgment of the court are: (1) the PTO has not adopted a rule placing the burden of persuasion with respect to the patentability of amended claims on the patent owner that is entitled to deference; and (2) in the absence of anything that might be entitled deference, the PTO may not place that burden on the patentee.

*Aqua Prods.*, 872 F.3d at 1327.

In accordance with *Aqua Products*, a patent owner does not bear the burden of persuasion to demonstrate the patentability of substitute claims presented in a motion to amend.  Rather, the burden of persuasion ordinarily will lie with the petitioner to show that any proposed substitute claims are unpatentable by a preponderance of the evidence.  The Board itself also may justify any finding of unpatentability by reference to evidence of record in the proceeding, for example, when a petitioner ceases to participate.  Ultimately, the Board determines whether substitute claims are unpatentable by a preponderance of the evidence based on the entirety of the record, including any opposition made by the petitioner.  *See Lectrosonics, Inc. v. Zaxcom, Inc.*, Case IPR2018-01129, -01130, slip op. at 3-4 (PTAB Feb. 25, 2019) (Paper 15) (precedential) (providing additional information and guidance regarding motions to amend, such as statutory and regulatory requirements as set forth in 35 U.S.C. § 316(d) and 37 C.F.R. §§ 42.121 and 42.221).  Thus, for example, if the entirety of the evidence of record before the Board is in equipoise as to the unpatentability of one or more substitute claims, the Board will grant the motion to amend with respect to such claims, and the Office will issue a certificate incorporating those claims into the patent at issue.

Contents of Motion to Amend.  Any motion to amend must comply with the content requirements of 37 C.F.R. §§ 42.121(b) or 42.221(b).  37 C.F.R. §§ 42.121(b) and 42.221(b) require that any motion to amend include a claim listing, show the changes being sought clearly, and describe how the original disclosure of the patent and any relied upon prior application supports each claim that is added or amended.  The claim listing may be contained in an appendix to the motion.  37 C.F.R. §§ 42.121(b), 42.221(b).  A patent owner may not enlarge the scope of the claims of the patent or add new matter.  35 U.S.C. §§ 316(d)(3), 326(d)(3).  Where a motion seeks to replace an original patent claim with a new claim, the new claim should be identified as a proposed substitute claim, specifying the original claim for which the new claim is a proposed substitute, with all changes relative to the original claim clearly identified and discussed.  Any motion to amend must also set forth the support in the original disclosure of the patent as well as any application for which benefit of the filing date of the earlier filed disclosure is sought.  37 C.F.R. §§ 42.121(b), 42.221(b).

A patent owner should identify specifically the feature(s) added to each substitute claim and any proposed constructions for new claim terms.  Although not required, patent owners may offer arguments regarding patentability of any proposed substitute claim and may support their arguments regarding patentability with testimony from a technical expert.  For example, such testimony may be helpful to show what would have been known to a person of ordinary skill in the art and explain the significance of features added in a proposed substitute claim.

<u>Claim Construction</u>.  In relation to any AIA petition filed on or after November 13, 2018, the Board will interpret claims at issue in the proceeding, including substitute claims proposed in a motion to amend, using the same standard that would be used to construe the claim in a civil action under 35 U.S.C. § 282(b).  *See* 37 C.F.R. § 42.100(b); Final Rule, 83 Fed. Reg. 51,340 (Oct. 11, 2018).

When filing a motion to amend, a patent owner may seek to demonstrate that the scope of the amended claim is substantially identical to that of the original patent claim, as the original patent claim would have been interpreted by a district court.  In such cases, a patent owner may request that the Board determine that the amended claim and original patent claim are substantially identical within the meaning of 35 U.S.C. § 252.  *See Google Inc. v. ContentGuard Holdings, Inc.*, Case CBM2015-00040, slip op. at 69–72 (PTAB June 21, 2016) (Paper 34) (determining that a substitute claim proposed by the patent owner was "substantially identical" to the original claim).

2.  <u>Amendments in Derivation Proceedings</u>:  The filing of a motion to amend claims by a petitioner or respondent in a derivation proceeding will be authorized upon a showing of good cause.  37 C.F.R. § 42.20.  An example of good cause is where the amendment materially advances settlement between the parties or seeks to cancel claims.  The Board expects, however, that a request to cancel all of a party's disputed claims will be treated as a request for adverse judgment.  37 C.F.R. § 42.73(b).

3. <u>General Practice Tips on Amendments</u>:  Motions to amend claims are expected to be filed by the due dates set for filing a patent owner response.  To reduce the number of issues in dispute, however, motions to cancel claims will generally be permitted even late in the proceeding, as will motions to amend to correct simple and obvious typographical errors.

Amendments should clearly state where the specification and any drawings support all the limitations in the proposed substitute claims.  If the Board is unable to determine how the specification and drawings support the proposed substitute claims, the motion to amend may be denied.

Motions to amend must respond to a ground of unpatentability involved in the trial.  37 C.F.R. § 42.121(a)(2)(i).  The rule does not require, however, that every word added to or removed from a claim in a motion to amend be solely for the purpose of overcoming an instituted ground.  Additional modifications that address potential 35 U.S.C. § 101 or § 112 issues, for example, are not precluded by rule or statute.  *Lectrosonics, Inc. v. Zaxcom, Inc.*, Case IPR2018-01129, -01130, slip op. at 5–6 (PTAB Feb. 25, 2019) (Paper 15) (precedential).

Motions to amend should clearly state the patentably distinct features for proposed substitute claims.  This will aid the Board in determining whether the amendment enlarges the claims and if the amendment is responsive to the grounds of unpatentability involved in the trial.

"Under 37 C.F.R. § 42.11, all parties have a duty of candor, which includes a patent owner's duty to disclose to the Board information of which the patent owner is aware that is material to the patentability of substitute claims, if such information is not already of record in the case." *Id.* at 9–10.

The number of substitute claims must be "reasonable."  There is a presumption that only one substitute claim would be needed to replace each challenged claim.  37 C.F.R. §§ 42.121(a), 42.221(a).  This presumption may be rebutted by a demonstration of need.

## H.  Opposition to a Motion to Amend

A petitioner will be afforded an opportunity to fully respond to a patent owner's motion to amend.  The time for filing an opposition generally will be set in a Scheduling Order. No authorization is needed to file an opposition to a motion to amend.  Petitioners may respond to new issues arising from proposed substitute claims and may include evidence responsive to the amendment.  35 U.S.C. §§ 316(a), 326(a).  This includes the submission of new expert declarations or additional prior art that are directed to the proposed substitute claims.

The grounds of unpatentability that can be raised in response to proposed substitute amended claims presented in a motion to amend are not limited by 35 U.S.C. § 311(b).  In contrast to 35 U.S.C. § 311(b), the statutory provision providing a right to a motion to amend, 35 U.S.C. § 316(d), does not prevent the Board from considering unpatentability under sections other than 35 U.S.C. §§ 102 and 103 with respect to substitute claims.  *Amazon.com, Inc. v. Uniloc*

*Luxembourg S.A.*, Case IPR2017-00948, slip op. at 5 (PTAB Jan. 18, 2019) (Paper 34) (precedential).  Thus, petitioner may raise, and the Board may consider, other grounds of unpatentability, including 35 U.S.C. §§ 101 and 112, as to proposed substitute claims.

## I.  Reply to Patent Owner Response and Reply to Petitioner Opposition to a Motion to Amend; Sur-Replies

A petitioner may file a reply to a patent owner response, and a patent owner may file a reply to an opposition to a motion to amend.  37 C.F.R. § 42.23.  Additionally, in response to issues arising from the Supreme Court's decision in *SAS* (138 S. Ct. at 1358), the Board will permit the petitioner, in its reply brief, to address issues discussed in the institution decision. The patent owner will similarly be allowed to address the institution decision in its sur-reply, if necessary to respond to petitioner's reply.  Petitioner may not submit new evidence or argument in reply that it could have presented earlier, e.g. to make out a prima facie case of unpatentability.  A party also may submit rebuttal evidence in support of its reply.  *See Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1077–78 (Fed. Cir. 2015).  If a party submits a new expert declaration with its reply, the opposing party may cross-examine the expert, move to exclude the declaration, and comment on the declaration and cross-examination in any sur-reply.  *Id.* at 1081−82.

Sur-replies to principal briefs (i.e., to a reply to a patent owner response or to a reply to an opposition to a motion to amend) normally will be authorized by the scheduling order entered at institution.  The sur-reply may not be accompanied by new evidence other than deposition transcripts of the cross-examination of any reply witness.  Sur-replies should only respond to

arguments made in reply briefs, comment on reply declaration testimony, or point to cross-examination testimony.  As noted above, a sur-reply may address the institution decision if necessary to respond to the petitioner's reply.  This sur-reply practice essentially replaces the previous practice of filing observations on cross-examination testimony.

Generally, a reply or sur-reply may only respond to arguments raised in the preceding brief. 37 C.F.R. § 42.23, except as noted above.  "Respond," in the context of 37 C.F.R. § 42.23(b), does not mean proceed in a new direction with a new approach as compared to the positions taken in a prior filing.  While replies and sur-replies can help crystalize issues for decision, a reply or sur-reply that raises a new issue or belatedly presents evidence may not be considered.  The Board is not required to attempt to sort proper from improper portions of the reply or sur-reply.

Examples of indications that a new issue has been raised in a reply include new evidence necessary to make out a *prima facie* case for the patentability or unpatentability of an original or proposed substitute claim, such as newly raised rationale to combine the prior art references that was not expressed in the petition.  *See Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1369–70 (Fed. Cir. 2016) (holding that the Board did not err in refusing the reply brief as improper under 37 C.F.R. § 42.23(b) because petitioner relied on an entirely new rationale to explain why one of skill in the art would have combined the references at issue).  It is also improper for a reply to present new evidence (including new expert testimony) that could have been presented in a prior filing, for example newly cited prior art references intended to "gap-fill" by teaching a claim element that was not present in

74

the prior art presented with the petition.  *See Genzyme Therapeutic Prods. Ltd. v. Biomarin Pharm. Inc.*, 825 F.3d 1360, 1365–69 (Fed. Cir. 2016) (proper for Board to rely on prior art references submitted with petitioner's reply to establish the state of the art at the time of the invention in response to patent owner arguments).

## J.  Other Motions

There are many types of motions that may be filed in a proceeding in addition to motions to amend.  Examples of additional motions include motions to exclude evidence, motions to seal, motions for joinder, motions to file supplemental information, motions for judgment based on supplemental information, etc.

Where a party believes it has a basis to request relief on a ground not identified in the rules, the party should contact the Board and arrange for a conference call with the Board and opposing party to discuss the requested relief with the judge handling the proceeding.

When filing the motion, the party must comply with the appropriate requirements.  For example, a motion to submit supplemental information must meet the requirements of 37 C.F.R. §§ 42.123 or 42.223 that:  (1) a request for the authorization to file a motion to submit supplemental information be made within one month of the date the trial is instituted; and (2) the supplemental information must be relevant to a claim for which the trial has been instituted.  Further, a party seeking to submit supplemental information more than one month after the date the trial is instituted must request authorization to file a motion to submit the information.  Such a motion to submit supplemental information must show why the

75

supplemental information reasonably could not have been obtained earlier, and that consideration of the supplemental information would be in the interests-of-justice.  37 C.F.R. §§ 42.123(b), 42.223(b).

Motions for Joinder.  A party may seek to join a first proceeding by filing a motion for joinder within one month of the date that a trial is instituted as to the first proceeding.  37 C.F.R. §§ 42.122, 42.222.  A party who files a motion for joinder should arrange a conference call with the panel, petitioner, and patent owner of the first proceeding within five business days of filing the motion.  The purpose of the conference call is for the panel to timely manage the proceedings.

Factors that the Board may consider in deciding a motion for joinder include why joinder is appropriate, whether a new ground of unpatentability is raised in the second petition, how the cost and schedule of the first proceeding will be impacted if joinder is granted, and whether granting joinder will add to the complexity of briefing and/or discovery.  *See, e.g.*, *Kyocera Corp. v. Softview LLC*, Case IPR2013-00004, slip op. at 4 (PTAB Apr. 24, 2013) (Paper 15).

The Board has discretion under 35 U.S.C. § 315(c) to join a petitioner to a proceeding in which it is already a party and to allow joinder of new issues into an existing proceeding. *Proppant Express Invs. v. Oren Techs.*, Case IPR2018-00914, slip op. at 3–4 (PTAB Mar. 13, 2019) (Paper 38) (precedential).  Furthermore, the existence of a time bar under 35 U.S.C. § 315(b) is one of several factors that may be considered when exercising discretion under 35 U.S.C. § 315(c).  *Proppant*, Case IPR2018-00914, slip op. at 4.  Thus, when an otherwise

76

time-barred petitioner requests same party and/or issue joinder, the Board may exercise its discretion to permit joinder, but will do so only where fairness requires it and to avoid undue prejudice to a party. *Id*. at 19. The Board expects to exercise its discretion to permit such joinder only in extremely limited circumstances. *Id*. Circumstances leading to this narrow exercise of discretion to permit such joinder may include, for example, certain actions taken by a patent owner in a co-pending litigation such as certain late additions of newly asserted claims. *Id*. The Board does not generally expect fairness and prejudice concerns to be implicated by, for example, the mistakes or omissions of a petitioner. *Id*. The conduct of the parties and attempts to game the system may also be considered. *Id*. In this way, the Board can carefully balance the interest in preventing harassment against fairness and prejudice concerns on a case-by-case basis, based on the facts then before it. *Id*.

Other factors may also be important when considering whether to grant joinder to an otherwise time-barred petitioner requesting same party and/or issue joinder. For example, the stage and schedule of an existing *inter partes* review might make joinder to that proceeding inappropriate. *Id*. Also, consideration of the non-exclusive factors set out in *General Plastic Industrial Co. v. Canon Kabushiki Kaisha*, Case IPR2016-01357, slip op. at 16 (PTAB Sept. 6, 2017) (Paper 19) (precedential as to § II.B.4.i), may support the exercise of the Board's discretion to deny institution under 35 U.S.C. § 314(a). *Proppant*, Case IPR2018-00914, slip op. at 19. Events in other proceedings related to the patent at issue may also weigh on the Board's discretion in a given case. *Id*.

In proceedings in which one or more parties are joined, the Board is permitted to adjust the

one-year statutory deadline for issuing a final written decision. *See* 35 U.S.C. §§ 316(a)(11), 326(a)(11) ("[T]he final determination in [an *inter partes* or post-grant] review [shall] be issued not later than 1 year after the date on which the Director notices the institution of a review under this chapter, except that the Director . . . may adjust the time periods in this paragraph in the case of joinder"); *see also* 37 C.F.R. §§ 42.100(c), 42.200(c), 42.300(c) (An IPR, PGR, or CBM "proceeding shall be administered such that pendency before the Board after institution is normally no more than one year. The time can be . . . adjusted by the Board in the case of joinder.").

Notwithstanding joinder, the Board will endeavor to issue a final written decision within one year from the date a trial is instituted. In cases where the joined party adds additional claims, grounds, evidence, or arguments that complicate the proceeding, however, it is more likely that the Board will adjust the deadline for issuing a final written decision. If possible, such adjustments will not exceed an additional six months. In the case of joinder, if the Board determines that it will adjust the deadline for issuing a final written decision, the Board will specify the new deadline in an order issued prior to the expiration of the one-year statutory time period in the case to which the current petitioner is joined. *See, e.g.*, *Apple, Inc. v. Evolved Wireless LLC*, Case IPR2016-00758 (PTAB Oct. 12, 2017) (Paper 44).

### K. Challenging Admissibility; Motions to Exclude; Motions to Strike

A party wishing to challenge the admissibility of deposition evidence must make an objection during the deposition. 37 C.F.R. § 42.64(a). A party wishing to challenge the admissibility of evidence other than deposition evidence, must file any objections within five

business days of service of evidence to which the objection is directed, or ten days after institution of trial.  37 C.F.R. § 42.64(b)(1).  Supplemental evidence is not filed at the time of the objection, but simply served, and is filed only in support of an opposition to a motion to exclude.  *See* 37 C.F.R. §§ 42.64(a), 42.64(b)(2).

Motions to Exclude.  Objections may be preserved only by filing a motion to exclude the evidence.  37 C.F.R. § 42.64(c).  The due dates for filing a motion to exclude evidence, an opposition, and a reply for a motion to exclude are usually set in the Scheduling Order. A motion to exclude evidence should:

    (a)  Identify where in the record the objection originally was made;

    (b)  Identify where in the record the evidence sought to be excluded was relied upon by an opponent;

    (c)  Address objections to exhibits in numerical order; and

    (d)  Explain the basis and grounds for each objection.

A motion to exclude must explain why the evidence is not admissible (e.g., relevance or hearsay) but may not be used to challenge the sufficiency of the evidence to prove a particular fact.  A motion to exclude is not a vehicle for addressing the weight to be given evidence—arguments regarding weight should appear only in the merits documents.  Nor should a motion to exclude address arguments or evidence that a party believes exceeds the proper scope of reply or sur-reply.

Generally, the Board waits until after the oral hearing, when it reviews the record in its entirety, to decide the merits of any motions to exclude.  In the Board's experience,

consideration of the objected-to evidence is often unnecessary to resolve the patentability of the challenged claims, and the motion to exclude is moot.  Nevertheless, in certain circumstances, the evidence may be so central to the parties' dispute that mootness is unlikely and early resolution of the motion to exclude may be warranted.  In such cases, a party may request a pre-hearing conference with the panel to seek early resolution of a motion to exclude on a limited number of objections.  The Board will preferably rule on such a motion during the pre-hearing conference (or after the pre-hearing conference but before the oral hearing), but may also defer ruling until the oral hearing or thereafter.

Motions to Strike.  If a party believes that a brief filed by the opposing party raises new issues, is accompanied by belatedly presented evidence, or otherwise exceeds the proper scope of reply or sur-reply, it may request authorization to file a motion to strike. Alternatively, a party may request authorization for further merits briefing, such as a sur-reply, to address the merits of any newly-raised arguments or evidence.

A motion to strike may be appropriate when a party believes the Board should disregard arguments or late-filed evidence in its entirety, whereas further briefing may be more appropriate when the party wishes to address the proper weight the Board should give to the arguments or evidence.  In most cases, the Board is capable of identifying new issues or belatedly presented evidence when weighing the evidence at the close of trial, and disregarding any new issues or belatedly presented evidence that exceeds the proper scope of reply or sur-reply.  As such, striking the entirety or a portion of a party's brief is an exceptional remedy that the Board expects will be granted rarely.  In some cases, however,

whether an issue is new or evidence is belatedly presented may be beyond dispute, or the prejudice to a party of waiting until the close of the evidence to determine whether new issues or belatedly presented evidence has been presented may be so great, that the facts may merit considering a motion to strike. For example, where a reply clearly relies on a new theory not included in prior briefing, and where addressing this new theory during oral hearing would prejudice the opposing party, striking the portion of the brief containing that theory may be appropriate. When authorized, the Board expects that it will decide a motion to strike as soon as practicable, and preferably before oral hearing, so that the parties need not devote time during the hearing to addressing improper arguments.

Generally, authorization to file a motion to strike should be requested within one week of the allegedly improper submission. The Board will consider such requests on a case-by-case basis.

**L. [DELETED]**

**M. Oral Hearing**

Each party to a proceeding will be afforded an opportunity to present their case before at least three members of the Board. The time for requesting an oral hearing is normally set in the Scheduling Order but may be modified on a case-by-case basis. A request for oral hearing should include the amount of time a party considers sufficient to present its argument to the Board. The Board expects to ordinarily provide for an hour of argument per side for a single proceeding, but a party may request more or less time depending on the circumstances

of the case.  The Board encourages the parties to confer before filing a request for oral hearing and, if possible, jointly agree regarding the appropriate argument time needed for each side.

A pre-hearing conference call will be held at either party's request and will generally occur no later than three business days prior to the oral hearing.  Prior to making such a request, the parties should meet and confer and, when possible, send a joint request to the Board with an agreed upon set of limited issues for discussion.  A request for a pre-hearing conference may be made by email and shall include a list of issues to be discussed during the call, including, e.g., identification of a limited number of objections for early resolution as discussed above. The time for making the request will be set in the Scheduling Order, but generally will be required to be sent to the Board no later than the due date set for a reply to an opposition to motion to exclude evidence.

The purpose of the pre-hearing conference is to afford the parties the opportunity to preview (but not argue) the issues to be discussed at the oral hearing, and to seek the Board's guidance as to particular issues that the panel would like addressed by the parties.  The parties may also discuss with the Board any pending motions to strike, request an early decision on the admissibility of a limited number of exhibits subject to a motion to exclude, and discuss any unresolved issues with demonstrative exhibits.  The Board will preferably rule on pending motions and limited numbers of objections and disputed exhibits during the pre-hearing conference (or after the pre-hearing conference but before the oral hearing), but may also defer ruling until the oral hearing or thereafter.

At the oral hearing, a petitioner generally will argue first, followed by the patent owner, after which a rebuttal may be given by the petitioner.  Absent special circumstances, a petitioner will not be permitted to reserve for rebuttal more than half the total time allotted for argument.  The Board may also permit patent owners the opportunity to present a brief sur-rebuttal if requested.  In hearings involving multiple parties or multiple patents, the Board will work with the parties to come up with a format for the hearing that gives the parties a fair opportunity to present their case while preserving the efficiency of the proceedings.

Although most hearings in AIA trials are held at USPTO headquarters in Alexandria, Virginia, some hearings are held in USPTO regional offices.  The Scheduling Order will generally indicate if a panel is available to hold a final hearing in locations other than Alexandria and will provide guidance to the parties on expressing a location preference.  If the necessary resources are available, the request will be given due consideration.  The Board may not always be able to honor the parties' preference of hearing location, however, due to the availability of hearing room resources and panel needs.

Special equipment or needs.  Hearing rooms are equipped with projectors for PowerPoint presentations.  However, a party should advise the Board as soon as possible before an oral argument of any special needs.  Examples of such needs include additional space for a wheelchair, an easel for posters, or an overhead projector ("Elmo").  Parties should not make assumptions about the equipment the Board may have on hand.  Such requests should be directed in the first instance to a Board Trial Division paralegal at (571) 272-9797.

<u>Demonstrative exhibits</u>.  The Board has found that elaborate demonstrative exhibits are more likely to impede than help an oral argument.  The most effective demonstrative exhibits tend to be a few presentation slides and a handout or binder containing the demonstrative exhibits.  The pages of each exhibit should be numbered and counsel should identify the exhibit numbers during course of oral argument, particularly if the panel includes members participating remotely.

Demonstrative exhibits used at the final hearing are aids to oral argument and not evidence, and should be clearly marked as such.  For example, each slide of a demonstrative exhibit may be marked with the words "DEMONSTRATIVE EXHIBIT – NOT EVIDENCE" in the footer.  Demonstrative exhibits cannot be used to advance arguments or introduce evidence not previously presented in the record.  *See Dell Inc. v. Acceleron, LLC*, 884 F.3d 1364, 1369 (Fed. Cir. 2018) (noting that the "Board was obligated to dismiss [the petitioner's] untimely argument . . . raised for the first time during oral argument").  Demonstrative exhibits, marked as noted above, should be filed in the record in accordance with the orders of the panel.

The order setting oral argument will set forth the panel's preferred procedure for handling objections to demonstratives, if any.  The parties are encouraged to resolve objections by exchanging proposed demonstrative exhibits and conferring prior to submitting the exhibits to the Board.  Objections to demonstratives should be carefully considered and framed as the Board has not found that such objections are helpful in many cases.

<u>Live testimony</u>.  The Board receives relatively few requests for presenting live testimony. When requested by a party, and where the panel believes live testimony will be helpful in making a determination, the Office will permit live testimony at the oral hearing.  The Board will consider such requests on a case-by-case basis, but does not expect to permit live testimony in every case where there is conflicting testimony.

The format for presenting live testimony is left to the discretion of the panel.  Live testimony is normally evidence that becomes part of the record.  The Board may direct questions to any witness who testifies in person at the hearing.

In general, a request for live testimony is more likely to be granted where the Board determines that the demeanor of a witness is critical to evaluating that witness's credibility. A party requesting live testimony should be prepared to explain why and how this consideration applies.  An example of a situation where this may apply is where an inventor is attempting to antedate a reference by establishing a prior reduction to practice.  *See K-40 Electronics, LLC v. Escort, Inc.*, Case IPR2013-00203 (PTAB May 21, 2014) (Paper 34) (precedential).  Other factors may include the importance of the issue that is the subject of the testimony.  The Board is more likely to grant oral testimony critical to issues that are case-dispositive.  *Id.* at 2.

<u>No new evidence and arguments</u>.  During an oral hearing, a party may rely upon appropriate demonstrative exhibits as well as evidence that has been previously submitted in the

proceeding, but may only present arguments relied upon in the papers previously submitted. Except in cases where the Board permits live testimony, no new evidence may be presented at the oral argument. Live testimony may not exceed the scope of the underlying declaration and may not address new theories or arguments not previously presented by a party.

## N. Settlement

There are strong public policy reasons to favor settlement between the parties to a proceeding. The Board will be available to facilitate settlement discussions, and where appropriate, may require a settlement discussion as part of the proceeding. The Board expects that a proceeding will terminate after the filing of a settlement agreement, unless the Board has already decided the merits of the proceeding. 35 U.S.C. §§ 317(a), 327.

## O. Final Decision

For IPR, PGR, and CBM proceedings, the Board will enter a final written decision not more than one year from the date a trial is instituted, except that the time may be extended up to six months for good cause. 35 U.S.C. § 316(a)(11). This timeline may also be adjusted in case of joinder (see above at II.J.). *Id.* The Board expects that a final written decision will address the issues necessary for resolving the proceeding.

In the case of derivation proceedings, although not required by statute, the Board expects to provide a final decision not more than one year from the institution of the proceeding. The Board will provide a final decision as to whether an inventor named in the earlier application derived the claimed invention from an inventor named in the petitioner's application and

filed the earlier application claiming such invention without authorization.

Remands.  The Board has established a goal to issue decisions on cases remanded from the Court of Appeals for the Federal Circuit for further proceedings within six months of the Board's receipt of the Federal Circuit's mandate.  The procedure and pace of a remand following a Federal Circuit decision will vary depending on the type of case, the legal and factual issues involved, the specific instructions from the Federal Circuit, the recommendations of the parties, and any other particularities of the case.  For additional information on remands, see the Board's Standard Operating Procedure 9.  PAT. TRIAL & APP. BD., USPTO, STANDARD OPERATING PROCEDURE 9: PROCEDURE FOR DECISIONS REMANDED FROM THE FEDERAL CIRCUIT FOR FURTHER PROCEEDINGS.

To facilitate the Board's timely issuance of decisions on remand, parties in remanded trial cases are to contact the Board within ten business days after the mandate issues to arrange a conference call with the panel.  Before the conference call, the parties shall meet and confer in a reasonable and good faith attempt to propose a procedure on remand.  Parties are encouraged to seek agreement, if possible, on remand procedures including, but not limited to:  (1) whether additional briefing is necessary; (2) subject matter limitations on briefing; (3) length of briefing; (4) whether the parties should file briefs concurrently or sequentially; (5) if briefs are filed sequentially, which party should open the briefing; (6) whether a second brief from either party should be permitted; (7) the briefing schedule; (8) whether either party should be permitted to supplement the evidentiary record; (9) limitations, if any, on the type of additional evidence that will be submitted; (10) the schedule for submitting additional

evidence, if any; and (11) any other relevant procedural issues.  Conference calls with the Board should take place within the first month after the mandate issues.

The Board will consider the parties' proposals and decide the procedures to be followed.  For example, the Board will decide whether to permit additional briefing and additional evidence (testimonial and documentary) or hold additional hearings following a remand, taking into account, among other considerations, the scope of the remand, as determined from the reasoning and instructions provided by the Federal Circuit, and the "effect . . . on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings."  35 U.S.C. §§ 316(b), 326(b).

In deciding whether to permit additional briefing and the introduction of additional evidence, the Board may take into account whether the parties already have had an adequate opportunity to address the issues raised by the remand with the briefing and evidence already of record.  Additional briefing, when permitted, will normally be limited to the specific issues raised by the remand.  *See Microsoft Corp. v. Proxyconn, Inc.*, Case IPR2012-00026 (PTAB Sept. 1, 2015) (Paper 77); *see also Dell Inc., v. Acceleron, LLC*, Case IPR2013-00440 (PTAB May 26, 2016) (Paper 46).  Moreover, unless the Federal Circuit's opinion directs the Board to reopen the evidentiary record, a party seeking to re-open the evidentiary record will be expected to demonstrate why the evidence already before the Board is inadequate and to show good cause why additional evidence is necessary.  The Board may also consider whether any authorized additional briefing would be sufficient without the submission of additional evidence, as well as how much additional time would be necessary

to develop a new evidentiary record.  In most cases, an additional oral hearing will not be authorized, as the existing record and previous oral argument normally will be sufficient. However, in those situations where new evidence is permitted, the Board may authorize additional oral argument.

Although no statutory time limit exists for completion of a re-opened proceeding following remand, the Board recognizes that delays caused by re-opening the record after remand may be inconsistent with the Board's stated goal of issuing a remand decision within six months from the mandate.  Accordingly, the Board also will consider the time and expense that permitting additional briefing and new evidence will add to the proceeding, consistent with the expression of Board policy in 37 C.F.R. § 42.1(b):  "This part shall be construed to secure the just, speedy, and inexpensive resolution of every proceeding."

Absent good cause, proceedings on remand generally will not be stayed once the Federal Circuit has issued its mandate, even when a party has petitioned the Supreme Court for a writ of certiorari.  A party may contact the Board to request authorization to file a motion for a stay of proceedings on remand.  The Board will consider such requests on a case-by-case basis.  The Board may require briefing on a motion to stay the remand proceedings, or, for convenience, the issue may be discussed and decided in a conference call.  In deciding whether to stay remanded proceedings, the Board may consider, among other things, whether the Supreme Court's judgment would impact the Board's decision on remand.  *See, e.g.*, *SAS Inst., Inc. v. ComplementSoft, LLC*, Case IPR2013-00226 (PTAB Feb. 8, 2017) (Paper 57) (denying request to stay because the issue on remand was separable from, and not influenced

by, the question presented in the certiorari petition).  The Board's decision not to stay remanded proceedings does not affect the right of a party to petition the Supreme Court for a writ of certiorari.


## P.  Rehearing Requests

A party dissatisfied with a decision of the Board may file a request for rehearing.  37 C.F.R. § 42.71.  The burden of showing that a decision should be modified lies with the party challenging the decision.  The request must specifically identify all matters the party believes the Board misapprehended or overlooked, and where each matter was previously addressed in a motion, an opposition, or a reply.  "Ideally, a party seeking to admit new evidence with a rehearing request would request a conference call with the Board prior to filing such a request so that it could argue 'good cause' exists for admitting the new evidence. Alternatively, a party may argue 'good cause' exists in the rehearing itself."  *Huawei Device Co., Ltd. v. Optis Cellular Tech., LLC*, Case IPR2018-00816, slip op. at 4 (PTAB Jan. 8, 2019) (Paper 19) (precedential).  Absent a showing of "good cause" prior to filing the request for rehearing or in the request for rehearing itself, new evidence will not be admitted.  *Id.*


The opposing party should not file a response to a request for rehearing absent a request from the Board.  The Board envisions that, absent a need for additional briefing by an opponent, requests for rehearing will be decided approximately one month after receipt of the request.

**APPENDIX A-1:  Sample Scheduling Order for *Inter partes* Review, Post-Grant Review, and Covered Business Method Patents Review (based on the trial rules).**

### A.       GENERAL INSTRUCTIONS

1.       Initial Conference Call

The parties are directed to contact the Board within a month of this Order if there is a need to discuss proposed changes to this Scheduling Order or proposed motions that have not been authorized in this Order or other prior Order or Notice.  *See* Office Patent Trial Practice Guide ("Practice Guide") (guidance in preparing for the initial conference call).  A request for an initial conference call shall include a list of proposed motions, if any, to be discussed during the call.

2.       Protective Order

No protective order shall apply to this proceeding until the Board enters one.  If either party files a motion to seal before entry of a protective order, a jointly proposed protective order shall be filed as an exhibit with the motion.  The Board encourages the parties to adopt the Board's default protective order if they conclude that a protective order is necessary.  *See* Practice Guide, App'x B (Default Protective Order).  If the parties choose to propose a protective order deviating from the default protective order, they must submit the proposed protective order jointly along with a marked-up comparison of the proposed and default protective orders showing the differences between the two and explain why good cause exists to deviate from the default protective order.

The Board has a strong interest in the public availability of trial proceedings.  Redactions to documents filed in this proceeding should be limited to the minimum amount necessary to protect confidential information, and the thrust of the underlying argument or

evidence must be clearly discernible from the redacted versions.  We also advise the parties that information subject to a protective order may become public if identified in a final written decision in this proceeding, and that a motion to expunge the information will not necessarily prevail over the public interest in maintaining a complete and understandable file history.  *See* Practice Guide.

      3.      Discovery Disputes

The Board encourages parties to resolve disputes relating to discovery on their own. To the extent that a dispute arises between the parties relating to discovery, the parties must meet and confer to resolve such a dispute before contacting the Board.  If attempts to resolve the dispute fail, a party may request a conference call with the Board.

      4.      Testimony

The parties are reminded that the Testimony Guidelines appended to the Trial Practice Guide, Appendix D, apply to this proceeding.  The Board may impose an appropriate sanction for failure to adhere to the Testimony Guidelines.  37 C.F.R. § 42.12. For example, reasonable expenses and attorneys' fees incurred by any party may be levied on a person who impedes, delays, or frustrates the fair examination of a witness.

      5.      Cross-Examination

Except as the parties might otherwise agree, for each due date:

Cross-examination ordinarily takes place after any supplemental evidence is due. 37 C.F.R. § 42.53(d)(2).

Cross-examination ordinarily ends no later than a week before the filing date for any paper in which the cross-examination testimony is expected to be used.  *Id.*

6.    Oral Argument

Requests for oral argument must comply with 37 C.F.R. § 42.70(a).  To permit the Board sufficient time to schedule the oral argument, the parties may not stipulate to an extension of the request for oral argument beyond the date set forth in the Due Date Appendix.

Unless the Board notifies the parties otherwise, oral argument, if requested, will be held at [the USPTO headquarters in Alexandria] [the Detroit, Michigan, USPTO Regional Office] [the Dallas, Texas, USPTO Regional Office] [the Denver, Colorado, USPTO Regional Office] [the San Jose, California, USPTO Regional Office].

The parties may request that the oral argument instead be held at [the USPTO headquarters in Alexandria] [the Detroit, Michigan, USPTO Regional Office] [the Dallas, Texas, USPTO Regional Office] [the Denver, Colorado, USPTO Regional Office] [the San Jose, California, USPTO Regional Office], or [the USPTO headquarters in Alexandria] [the Detroit, Michigan, USPTO Regional Office] [the Dallas, Texas, USPTO Regional Office] [the Denver, Colorado, USPTO Regional Office] [the San Jose, California, USPTO Regional Office].  The parties should meet and confer, and jointly propose the parties' preference at the initial conference call, if requested.  Alternatively, the parties may jointly file a paper stating their preference for the hearing location within one month of this order.  Note that the Board may not be able to honor the parties' preference of hearing location due to, among other things, the availability of hearing room resources and the needs of the panel.  The Board will consider the location request and notify the parties accordingly if a request for change in location is granted.

Seating in the Board's hearing rooms may be limited, and will be available on a first-come, first-served basis.  If either party anticipates that more than five (5) individuals will attend the argument on its behalf, the party should notify the Board as soon as possible, and no later than the request for oral argument.  Parties should note that the earlier a request for accommodation is made, the more likely the Board will be able to accommodate additional individuals.

### B.    DUE DATES

This order sets due dates for the parties to take action after institution of the proceeding.  The parties may stipulate different dates for DUE DATES 1 through 5 (earlier or later, but no later than DUE DATE 6).  A notice of the stipulation, specifically identifying the changed due dates, must be promptly filed.  The parties may not stipulate an extension of DUE DATES 6 and 7, or to the requests for oral hearing.

In stipulating different times, the parties should consider the effect of the stipulation on times to object to evidence (37 C.F.R. § 42.64(b)(1)), to supplement evidence (37 C.F.R. § 42.64(b)(2)), to conduct cross-examination (37 C.F.R. § 42.53(d)(2)), and to draft papers depending on the evidence and cross-examination testimony.

1. DUE DATE 1

Patent Owner may file—

a.  A response to the petition (37 C.F.R. § 42.120).  If Patent Owner elects not to file a response, Patent Owner must arrange a conference call with the parties and the Board. Patent Owner is cautioned that any arguments for patentability not raised in the response may be deemed waived.

94

b.  A motion to amend the patent (37 C.F.R. § 42.121).  Patent Owner may file a motion to amend without prior authorization from the Board.  Nevertheless, Patent Owner must confer with the Board before filing such a motion.  37 C.F.R. § 42.121(a).  To satisfy this requirement, Patent Owner should request a conference call with the Board no later than two weeks prior to DUE DATE 1.  The parties are directed to the Board's Guidance on Motions to Amend in view of *Aqua Products* (https://www.uspto.gov/sites/default/files/ documents/guidance_on_motions_to_amend_11_2017.pdf), and *Lectrosonics, Inc. v. Zaxcom, Inc.*, Case IPR2018-01129, -01130 (PTAB Feb. 25, 2019) (Paper 15) (precedential) (providing information and guidance on motions to amend).

2.  DUE DATE 2

Petitioner may file a reply to the Patent Owner's response.

Petitioner may file an opposition to the motion to amend.

3.  DUE DATE 3

Patent Owner may file a sur-reply to Petitioner's reply.

Patent Owner may file a reply to the opposition to the motion to amend.

4.  DUE DATE 4

Petitioner may file a sur-reply to Patent Owner's reply to the opposition to the motion to amend.

Either party may file a motion to exclude evidence (37 C.F.R. § 42.64(c)).

5.  DUE DATE 5

Either party may file an opposition to a motion to exclude evidence.

6.  DUE DATE 6

Either party may file a reply to an opposition to a motion to exclude evidence.

Either party may request that the Board hold a pre-hearing conference.

### 7. DUE DATE 7

The oral argument (if requested by either party) shall be held on this date.

Approximately one month prior to the argument, the Board will issue an order setting the start time of the hearing and the procedures that will govern the parties' arguments.

## DUE DATE APPENDIX

| | |
|---|---|
| **DUE DATE 1** | |
| Patent owner's response to the petition | **3 months** |
| Patent owner's motion to amend the patent | |
| **DUE DATE 2** | |
| Petitioner's reply to patent owner response to petition | **3 months** |
| Petitioner's opposition to motion to amend | |
| **DUE DATE 3** | |
| Patent Owner's sur-reply to reply | **1 month** |
| Patent Owner's reply to opposition to motion to amend | |
| **DUE DATE 4** | |
| Petitioner's sur-reply to reply to opposition to motion to amend | **1 month** |
| Motion to exclude evidence | |
| DUE DATE TO FILE REQUESTS FOR ORAL ARGUMENT | **Same as Due Date 4 (but parties may not stipulate an extension)** |
| **DUE DATE 5** | |
| Opposition to motion to exclude | **1 week** |
| **DUE DATE 6** | |
| Reply to opposition to motion to exclude | **1 week** |
| Request for prehearing conference | |

| DUE DATE 7 | **2 weeks** |
| --- | --- |
| Oral argument | |

**APPENDIX A-2:  Sample Scheduling Order for Derivation Proceedings.**

    **A.**       **GENERAL INSTRUCTIONS**

        1.       Initial Conference Call

The parties are directed to contact the Board within a month of this Order if there is a need to discuss proposed changes to this Scheduling Order or proposed motions that have not been authorized in this Order or other prior Order or Notice.  *See* Office Patent Trial Practice Guide ("Practice Guide") (guidance in preparing for the initial conference call).  A request for an initial conference call shall include a list of proposed motions, if any, to be discussed during the call.

        2.       Protective Order

No protective order shall apply to this proceeding until the Board enters one.  If either party files a motion to seal before entry of a protective order, a jointly proposed protective order shall be filed as an exhibit with the motion.  The Board encourages the parties to adopt the Board's default protective order if they conclude that a protective order is necessary.  *See* Practice Guide, App'x B (Default Protective Order).  If the parties choose to propose a protective order deviating from the default protective order, they must submit the proposed protective order jointly along with a marked-up comparison of the proposed and default protective orders showing the differences between the two and explain why good cause exists to deviate from the default protective order.

The Board has a strong interest in the public availability of trial proceedings. Redactions to documents filed in this proceeding should be limited to the minimum amount necessary to protect confidential information, and the thrust of the underlying argument or evidence must be clearly discernible from the redacted versions. We also advise the parties that information subject to a protective order may become public if identified in a final written decision in this proceeding, and that a motion to expunge the information will not necessarily prevail over the public interest in maintaining a complete and understandable file history. *See* Practice Guide.

### 3. Discovery Disputes

The Board encourages parties to resolve disputes relating to discovery on their own. To the extent that a dispute arises between the parties relating to discovery, the parties must meet and confer to resolve such a dispute before contacting the Board. If attempts to resolve the dispute fail, a party may request a conference call with the Board.

### 4. Testimony

The parties are reminded that the Testimony Guidelines appended to the Trial Practice Guide, Appendix D, apply to this proceeding. The Board may impose an appropriate sanction for failure to adhere to the Testimony Guidelines. 37 C.F.R. § 42.12. For example, reasonable expenses and attorneys' fees incurred by any party may be levied on a person who impedes, delays, or frustrates the fair examination of a witness.

5.    Cross-Examination

Except as the parties might otherwise agree, for each due date:

Cross-examination ordinarily takes place after any supplemental evidence is due. 37 C.F.R. § 42.53(d)(2).

Cross-examination ordinarily ends no later than a week before the filing date for any paper in which the cross-examination testimony is expected to be used. *Id.*

6.    Oral Argument

Requests for oral argument must comply with 37 C.F.R. § 42.70(a).  To permit the Board sufficient time to schedule the oral argument, the parties may not stipulate to an extension of the request for oral argument beyond the date set forth in the Due Date Appendix.

Unless the Board notifies the parties otherwise, oral argument, if requested, will be held at [the USPTO headquarters in Alexandria] [the Detroit, Michigan, USPTO Regional Office] [the Dallas, Texas, USPTO Regional Office] [the Denver, Colorado, USPTO Regional Office] [the San Jose, California, USPTO Regional Office].

The parties may request that the oral argument instead be held at [the USPTO headquarters in Alexandria] [the Detroit, Michigan, USPTO Regional Office] [the Dallas, Texas, USPTO Regional Office] [the Denver, Colorado, USPTO Regional Office] [the San Jose, California, USPTO Regional Office], or [the USPTO headquarters in Alexandria] [the Detroit, Michigan, USPTO Regional Office] [the Dallas, Texas, USPTO Regional Office] [the Denver, Colorado, USPTO Regional Office] [the San Jose,

California, USPTO Regional Office].  The parties should meet and confer, and jointly propose the parties' preference at the initial conference call, if requested.  Alternatively, the parties may jointly file a paper stating their preference for the hearing location within one month of this order.  Note that the Board may not be able to honor the parties' preference of hearing location due to, among other things, the availability of hearing room resources and the needs of the panel.  The Board will consider the location request and notify the parties accordingly if a request for change in location is granted.

Seating in the Board's hearing rooms may be limited, and will be available on a first-come, first-served basis.  If either party anticipates that more than five (5) individuals will attend the argument on its behalf, the party should notify the Board as soon as possible, and no later than the request for oral argument.  Parties should note that the earlier a request for accommodation is made, the more likely the Board will be able to accommodate additional individuals.

### B.    DUE DATES

This order sets due dates for the parties to take action after institution of the proceeding.  The parties may stipulate different dates for DUE DATES 1 through 5 (earlier or later, but not later than DUE DATE 6).  A notice of the stipulation, specifically identifying the changed due dates, must be promptly filed.  The parties may not stipulate an extension of DUE DATES 6-7, or to the requests for oral hearing.

In stipulating different times, the parties should consider the effect of the

102

stipulation on times to object to evidence (37 C.F.R. § 42.64 (b)(1)), to supplement evidence (§ 42.64(b)(2)), to conduct cross-examination, and to draft papers depending on the evidence and cross-examination testimony.

1.  DUE DATE 1

Respondent is not required to file anything in response to the petition. Respondent may file—

a.  A response to the petition, and

b.  A motion to amend, if authorized.

If Respondent elects not to file anything, Respondent must arrange a conference call with the parties and the Board.

2.  DUE DATE 2

Petitioner may file a reply to the respondent's response and an opposition to the motion to amend.

3.  DUE DATE 3

Respondent may file a sur-reply to Petitioner's reply.

Respondent may file a reply to the opposition to the motion to amend.

4.  DUE DATE 4

Petitioner may file a sur-reply to Respondent's reply to the opposition to the motion to amend.

Either party may file a motion to exclude evidence (37 C.F.R. § 42.64(c)).

103

### 5.  DUE DATE 5

Either party may file an opposition to a motion to exclude evidence.

### 6.  DUE DATE 6

Either party may file a reply to an opposition to exclude evidence.

Either party may request that the Board hold a pre-hearing conference.

### 7.  DUE DATE 7

The oral argument (if requested by either party) shall be held on this date.

Approximately one month prior to the argument, the Board will issue an order setting the start time of the hearing and the procedures that will govern the parties' arguments.

## DUE DATE APPENDIX

| | |
|---|---|
| **DUE DATE 1**<br><br>Respondent's response to the petition<br><br>Respondent's motion to amend | **3 months** |
| **DUE DATE 2**<br><br>Petitioner's reply to Respondent's response to petition<br><br>Petitioner's opposition to Respondent's motion to amend | **3 months** |
| **DUE DATE 3**<br><br>Respondent's sur-reply to reply<br><br>Respondent's reply to  opposition to motion to amend | **1 month** |
| **DUE DATE 4**<br><br>Petitioner's sur-reply to reply to opposition to motion to amend<br><br>Motion to exclude evidence | **1 month** |
| DUE DATE TO FILE REQUESTS FOR ORAL ARGUMENT | **Same as Due Date 4 (but parties may not stipulate an extension)** |
| **DUE DATE 5**<br><br>Opposition to motion to exclude | **1 week** |

| | |
|---|---|
| DUE DATE 6<br><br>Reply to opposition to motion to exclude<br><br>Request for prehearing conference | **1 week** |
| DUE DATE 7<br><br>Oral argument | **2 weeks** |

**APPENDIX B:  Protective Order Guidelines (based on the trial rules).**


(a) <u>Purpose</u>.  This document provides guidance on the procedures for filing of motions to seal and the entry of protective orders in proceedings before the Board.  A protective order is not entered by default but must be proposed by one or more parties and must be approved and entered by the Board.  The protective order governs the protection of confidential information contained in documents, discovery, or testimony adduced, exchanged, or filed with the Board.  The parties are encouraged to agree on the entry of a stipulated protective order.  Absent such agreement, the default protective order may be entered by the Board.


(b) <u>Timing; lifting or modification of the Protective Order</u>.  The terms of a protective order take effect upon the filing of a Motion to Seal by a party, and remain in place until lifted or modified by the Board.


(c) <u>Protective Order to Govern Treatment of Confidential Information</u>.  The terms of a protective order govern the treatment of the confidential portions of documents, testimony, and other information designated as confidential, as well as the filing of confidential documents or discussion of confidential information in any papers filed with the Board.  The Board shall have the authority to enforce the terms of the Protective Order, to provide remedies for its breach, and to impose sanctions on a party and a

107

party's representatives for any violations of its terms.

(d) <u>Contents</u>.  The Protective Order shall include the following terms:

(1) <u>Designation of Confidential Information</u>.  The producing party shall have the obligation to clearly mark as "PROTECTIVE ORDER MATERIAL" any documents or information considered to be confidential under the Protective Order.

(2) <u>Persons Entitled to Access to Confidential Information</u>.  A party receiving confidential information shall strictly restrict access to that information to the following individuals who first have signed and filed an Acknowledgement as provided herein:

(A) <u>Parties</u>.  Persons who are owners of a patent involved in the proceeding and other persons who are named parties to the proceeding.

(B) <u>Party Representatives</u>.  Representatives of record for a party in the proceeding.

(C) <u>Experts</u>.  Retained experts of a party in the proceeding who further certify in the Acknowledgement that they are not a competitor to any party, or a consultant for, or employed by, such a competitor with respect to the subject matter of the proceeding.

(D) <u>In-house counsel</u>.  In-house counsel of a party.

(E) <u>Support Personnel</u>.  Administrative assistants, clerical staff, court reporters,

and other support personnel of the foregoing persons who are reasonably necessary to assist those persons in the proceeding.  Such support personnel shall not be required to sign an Acknowledgement, but shall be informed of the terms and requirements of the Protective Order by the person they are supporting who receives confidential information.

 (F) The Office.  Employees and representatives of the U.S. Patent and Trademark Office who have a need for access to the confidential information shall have such access without the requirement to sign an Acknowledgement.  Such employees and representatives shall include the Director, members of the Board and staff, other Office support personnel, court reporters, and other persons acting on behalf of the Office.


(3) Employees (*e.g.*, corporate officers), consultants, or other persons performing work for a party, other than those persons identified in (d)(2)(A)–(E), shall be extended access to confidential information only upon agreement of the parties or by order of the Board upon a motion brought by the party seeking to disclose confidential information to that person and after signing the Acknowledgment.  The party opposing disclosure to that person shall have the burden of proving that such person should be restricted from access to confidential information.

109

(4) <u>Protection of Confidential Information</u>.  Persons receiving confidential information shall take reasonable care to maintain the confidentiality of that information, including:

(A) Maintaining such information in a secure location to which persons not authorized to receive the information shall not have access;

(B) Otherwise using reasonable efforts to maintain the confidentiality of the information, which efforts shall be no less rigorous than those the recipient uses to maintain the confidentiality of information not received from the disclosing party;

(C) Ensuring that support personnel of the recipient who have access to the confidential information understand and abide by the obligation to maintain the confidentiality of information received that is designated as confidential; and

(D) Limiting the copying of confidential information to a reasonable number of copies needed to conduct the proceeding and maintaining a record of the locations of such copies, which similarly must be kept secure.

(5) <u>Treatment of Confidential Information</u>.  Persons receiving confidential information shall use the following procedures to maintain confidentiality of documents and other information—

(A) <u>Documents and Information Filed With the Board</u>.

(i) A party may file documents or information with the Board along with a Motion to Seal.  The Motion to Seal should provide a non-confidential description of the

110

nature of the confidential information that is under seal, and set forth the reasons why the information is confidential, or if the information has been designated as confidential by the opposing party, that party shall set forth the reasons why the information redacted is confidential and should not be made available to the public. A party may challenge the confidentiality of the information by opposing the Motion to Seal. The documents or information shall remain under seal unless the Board determines that some or all of it does not qualify for confidential treatment.

(ii) Where confidentiality is alleged as to some but not all of the information submitted to the Board, the submitting party shall file confidential and non-confidential versions of its submission, together with a Motion to Seal the confidential version setting forth the reasons why the information redacted from the non-confidential version is confidential, or if the information has been designated as confidential by the opposing party, that party shall set forth the reasons why the information redacted is confidential and should not be made publicly available. A party may challenge the confidentiality of the information by opposing the Motion to Seal. The non-confidential version of the submission shall clearly indicate the locations of information that has been redacted. The confidential version of the submission shall be filed under seal. The redacted information shall remain under seal, unless the Board determines that some or all of the redacted information does not qualify for confidential treatment.

111

(B) <u>Documents and Information Exchanged Among the Parties</u>.  Documents

(including deposition transcripts) and other information designated as confidential

that are disclosed to another party during discovery or other proceedings before

the Board shall be clearly marked as "PROTECTIVE ORDER MATERIAL" and

shall be produced in a manner that maintains its confidentiality.

(6) <u>Confidential Testimony</u>.  Any person providing testimony in a proceeding

may, on the record during the testimony, preliminarily designate the entirety of the

person's testimony and all transcriptions thereof as confidential, pending further review.

Within ten days of the receipt of the transcript of the testimony, that person, or that

person's representative, shall advise the opposing party of those portions of the testimony

to which a claim of confidentiality is to be maintained, and the reasons in support of that

claim.  Such portions shall be treated as confidential and maintained under seal in any

filings to the Board unless, upon motion of a party, the Board determines that some or all

of the redacted information does not qualify for confidential treatment.

(7) <u>Other Restrictions Imposed By the Board</u>.  In addition to the foregoing, the

Board may, in its discretion, include other terms and conditions in a Protective Order it

enters in any proceeding.

(8) <u>Requirement of Acknowledgement</u>.  Any person receiving confidential

112

information during a proceeding before the Board shall, prior to receipt of any confidential information, first sign an Acknowledgement, under penalty of perjury, stating the following:

(A) The person has read the Protective Order and understands its terms;

(B) The person agrees to be bound by the Protective Order and will abide by its terms;

(C) The person will use the confidential information only in connection with that proceeding and for no other purpose;

(D) The person shall only extend access to the confidential information to support personnel, such as administrative assistants, clerical staff, paralegals, and the like, who are reasonably necessary to assist him or her in the proceeding.  The person shall inform such support personnel of the terms and requirements of the Protective Order prior to disclosure of any confidential information to such support personnel and shall be personally responsible for their compliance with the terms of the Protective Order; and

(E) The person agrees to submit to the jurisdiction of the Office for purposes of enforcing the terms of the Protective Order and providing remedies for its breach.


(e) Filing of Proposed Protective Order.  The party filing a Motion to Seal shall include with its supporting papers a copy of a proposed Protective Order and shall certify that the party accepts and agrees to the terms of the Protective Order.  Prior to the receipt of

confidential information, any other party to the proceeding also shall certify that the party accepts and agrees to the terms of the proposed Protective Order. The proposed Protective Order shall remain in effect until superseded by a Protective Order entered by the Board. If the parties agree to accept the terms of the Default Protective Order, they are not required to provide a copy but must certify that they accept and agree to its terms.

(f) <u>Duty To Retain Acknowledgements</u>. Each party to the proceeding shall maintain a signed Acknowledgement from each person acting on its behalf who obtains access to confidential information after signing an Acknowledgement, as set forth herein, and shall produce such Acknowledgements to the Office upon request.

(g) <u>Motion to Seal</u>. A party may file an opposition to the motion that may include a request that the terms of the proposed Protective Order be modified including limiting the persons who are entitled to access under the Order. Any such opposition shall state with particularity the grounds for modifying the proposed Protective Order. The party seeking the modification shall have the burden of proving that such modifications are necessary. While the motion is pending, no disclosure of confidential information shall be made to the persons for whom disclosure is opposed, but the filing of the motion shall not preclude disclosure of the confidential information to persons for whom disclosure is not opposed and shall not toll the time for taking any action in the proceeding.

(h) <u>Other Proceedings</u>.  Counsel for a party who receives confidential information in a proceeding will not be restricted by the Board from representing that party in any other proceeding or matter before the Office.  Confidential information received in a proceeding, however, may not be used in any other Office proceeding in which the providing party is not also a party.

(i) <u>Disposal of Confidential Information</u>.  Within 60 days after final termination of a proceeding, including any appeals, or within 60 days after the time for appeal has expired, each party shall assemble all copies of all confidential information it has received, including confidential information provided to its representatives and experts, and shall return or destroy the confidential information and provide a certification of destruction to the party who produced the confidential information.

(j) <u>Modifications to the Default Protective Order.</u>  The parties may propose modifications to the Default Protective Order.  The Board will consider changes agreed to by the parties, and generally will accept such proposed changes if they are consistent with the integrity and efficient administration of the proceedings.  For example, the parties may agree to modify the Default Protective Order to provide additional tiers or categories of confidential information, such as "Attorneys' Eyes Only."  The Board will presumptively accept agreed-to changes that provide additional categories of confidentiality as long as they are reasonable and adequately define what types of materials are to be included in

115

the additional categories.  The Board will not accept overly inclusive definitions that encourage the parties to categorize all or most of their discovery materials as "Attorneys' Eyes Only."

When a proceeding before the Board involves the same parties and subject matter as a parallel district court proceeding, parties may propose that a protective order entered by the district court be adopted by the Board.  The Board may enter such a proposed protective order especially if certain provisions commonly found in district court protective orders that are unnecessary or inappropriate in proceedings before the Board are removed before submitting the proposed protective order to the Board.  For example, provisions protecting computer source code may be unnecessary because proceedings before the Board rarely, if ever, require analysis of computer source code.  Likewise, prosecution bars are rarely appropriate in proceedings before the Board because the disadvantage caused by a prosecution bar to patent owners wishing to make use of amendment or reissue processes in most cases outweighs the risk that confidential technical information about existing or future commercial products will be revealed during a proceeding.  Finally, all terms of district court protective orders that conflict with Board procedures for filing or otherwise handling confidential information should be removed before the proposed order is submitted to the Board.

DEFAULT PROTECTIVE ORDER

The following Default Protective Order will govern the filing and treatment of confidential information in the proceeding:

**Default Protective Order**

This protective order governs the treatment and filing of confidential information, including documents and testimony.

1.  Confidential information shall be clearly marked "PROTECTIVE ORDER MATERIAL."

2.  Access to confidential information is limited to the following individuals who have executed the acknowledgment appended to this order:

(A) <u>Parties</u>.  Persons who are owners of a patent involved in the proceeding and other persons who are named parties to the proceeding.

(B) <u>Party Representatives</u>.  Representatives of record for a party in the proceeding.

(C) <u>Experts</u>.  Retained experts of a party in the proceeding who further certify in the Acknowledgement that they are not a competitor to any party, or a consultant for, or employed by, such a competitor with respect to the subject matter of the proceeding.

(D) <u>In-house counsel</u>.  In-house counsel of a party.

(E) <u>Support Personnel</u>. Administrative assistants, clerical staff, court reporters and

117

other support personnel of the foregoing persons who are reasonably necessary to assist those persons in the proceeding shall not be required to sign an Acknowledgement, but shall be informed of the terms and requirements of the Protective Order by the person they are supporting who receives confidential information.

(F) <u>The Office</u>.  Employees and representatives of the United States Patent and Trademark Office who have a need for access to the confidential information shall have such access without the requirement to sign an Acknowledgement.  Such employees and representatives shall include the Director, members of the Board and their clerical staff, other support personnel, court reporters, and other persons acting on behalf of the Office.

3.  Employees (e.g., corporate officers), consultants, or other persons performing work for a party, other than those persons identified above in (d)(2)(A)–(E), shall be extended access to confidential information only upon agreement of the parties or by order of the Board upon a motion brought by the party seeking to disclose confidential information to that person and after signing the Acknowledgment. The party opposing disclosure to that person shall have the burden of proving that such person should be restricted from access to confidential information.

4.  Persons receiving confidential information shall use reasonable efforts to

118

maintain the confidentiality of the information, including:

(A) Maintaining such information in a secure location to which persons not authorized to receive the information shall not have access;

(B) Otherwise using reasonable efforts to maintain the confidentiality of the information, which efforts shall be no less rigorous than those the recipient uses to maintain the confidentiality of information not received from the disclosing party;

(C) Ensuring that support personnel of the recipient who have access to the confidential information understand and abide by the obligation to maintain the confidentiality of information received that is designated as confidential; and

(D) Limiting the copying of confidential information to a reasonable number of copies needed for conduct of the proceeding and maintaining a record of the locations of such copies.


5.  Persons receiving confidential information shall use the following procedures to maintain the confidentiality of the information:

(A)  Documents and Information Filed With the Board.

(i) A party may file documents or information with the Board along with a Motion to Seal.  The Motion to Seal should provide a non-confidential description of the nature of the confidential information that is under seal, and set forth the reasons why the information is confidential and should not be made available to the public.  A party may challenge the confidentiality of the information by opposing

119

the Motion to Seal.  The documents or information shall remain under seal unless the Board determines that some or all of it does not qualify for confidential treatment.

(ii) Where confidentiality is alleged as to some but not all of the information submitted to the Board, the submitting party shall file confidential and non-confidential versions of its submission, together with a Motion to Seal the confidential version setting forth the reasons why the information redacted from the non-confidential version is confidential and should not be made available to the public.  A party may challenge the confidentiality of the information by opposing the Motion to Seal.  The non-confidential version of the submission shall clearly indicate the locations of information that has been redacted.  The confidential version of the submission shall be filed under seal.  The redacted information shall remain under seal unless the Board determines that some or all of the redacted information does not qualify for confidential treatment.

 (B) Documents and Information Exchanged Among the Parties.  Documents (including deposition transcripts) and other information designated as confidential that are disclosed to another party during discovery or other proceedings before the Board shall be clearly marked as "PROTECTIVE ORDER MATERIAL" and shall be produced in a manner that maintains its confidentiality.


6.  Within 60 days after the final disposition of this action, including the

120

exhaustion of all appeals and motions, each party receiving confidential information must return, or certify the destruction of, all copies of the confidential information to the producing party.

(k) <u>Standard Acknowledgement of Protective Order</u>.  The following form may be used to acknowledge a protective order and gain access to information covered by the protective order:

[CAPTION]

**Standard Acknowledgment for Access to Protective Order Material**

I _____, affirm that I have read the Protective Order; that I will abide by its terms; that I will use the confidential information only in connection with this proceeding and for no other purpose; that I will only allow access to support staff who are reasonably necessary to assist me in this proceeding; that prior to any disclosure to such support staff I informed or will inform them of the requirements of the Protective Order; that I am personally responsible for the requirements of the terms of the Protective Order and I agree to submit to the jurisdiction of the Office and the United States District Court for the Eastern District of Virginia for purposes of enforcing the terms of the

121

Protective Order and providing remedies for its breach.


[Signature]

**APPENDIX C:  Model Order Regarding E-Discovery in Trials Before The Patent Trial and Appeal Board**

The Board pursuant to 37 C.F.R. § 42.5 orders as follows:

1. This Order supplements all other discovery rules and orders.  It streamlines Electronically Stored Information (ESI) production to promote "the just, speedy, and inexpensive resolution" of this proceeding in a manner consistent with 37 C.F.R. § 42.1.

2. This Order may be modified for good cause.  The parties shall jointly submit any proposed modifications within one month after the initiation date of the proceeding or by the date of the initial conference call, whichever is earlier.  If the parties cannot resolve their disagreements regarding these modifications, the parties shall submit their competing proposals and a summary of their dispute within the specified time period.

3. Costs will be shifted for disproportionate ESI production requests.  Likewise, a party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations. *See* 35 U.S.C. §§ 316(a)(6), 326(a)(6).

4. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5. Unless otherwise authorized by the Board or agreed to by the parties, any production of ESI pursuant to 37 C.F.R. §§ 42.51 or 42.52 shall not include metadata. However, fields showing the date and time that the document was sent and received, as well as the complete distribution list, shall generally be included in the production if such fields exist.

6.  General ESI production under 37 C.F.R. §§ 42.51 and 42.52 (with the exception of routine discovery under § 42.51(b)(1)) shall not include email or other forms of electronic correspondence (collectively "email").  To obtain additional production of email, absent an agreement between the parties to produce, the parties must propound specific email production requests, which requests require prior Board authorization.

7.  Email production requests, where authorized by the Board or permitted by agreement of the parties, shall be propounded for specific issues only, rather than general discovery of a party's products or business.

8.  Email production requests, where authorized by the Board or permitted by agreement of the parties, shall be phased to occur after a party's initial production under 37 C.F.R. § 42.51(b)(1).

9.  Where email production requests are authorized by the Board or permitted by agreement of the parties, such requests shall identify the custodian, search terms, and time frame.  The parties shall cooperate to identify proper custodians, proper search terms, and proper time frame.

10.  Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests.  The parties may jointly agree to modify this limit without the Board's leave.  The Board shall consider contested requests for up to five additional custodians per producing party, upon showing a need based on the size, complexity, and issues of this specific proceeding.

11.  Each party shall limit its email production requests to a total of five search terms per custodian per party.  The parties may jointly agree to modify this limit without the Board's leave.  The Board shall consider contested requests for up to five additional search terms per custodian, upon showing a need based upon the size, complexity, and issues of this specific proceeding.  The search terms shall be narrowly tailored to particular issues.  Indiscriminate terms, such as producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.  A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production, and shall be considered when determining whether to shift costs for disproportionate discovery.

12.  The receiving party shall not use ESI that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection.

13.  Pursuant to Federal Rule of Evidence 502(b), the inadvertent production of an attorney-client privileged or work product protected ESI is not a waiver of such protection providing the holder of the privilege or protection took reasonable steps to prevent disclosure and the discloser promptly took reasonable steps to rectify the error.

14.  Similar to Federal Rule of Evidence 502(d), the mere production of ESI in the proceeding as part of a mass production shall not itself constitute a waiver of privilege for any purpose before the Office.

**APPENDIX D:  Testimony Guidelines**

Introduction

In trials before the Board, uncompelled direct testimony is almost always presented by affidavit or declaration. 37 C.F.R. § 42.53(a).  All other testimony (including cross-examination, redirect examination, and compelled direct testimony) occurs by oral examination.

Consistent with the policy expressed in Rule 1 of the Federal Rules of Civil Procedure, and corresponding 37 C.F.R. § 42.1(b), unnecessary objections, "speaking" objections, and coaching of witnesses in proceedings before the Board are strictly prohibited. Cross-examination testimony should be a question and answer conversation between the examining lawyer and the witness.  The defending lawyer must not act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness formulate answers while testifying.

The testimony guidelines that follow are based on those set forth in the Federal Rules of Civil Procedure, supplemented by the practices followed in several federal district courts.

Examination and cross-examination outside the presence of the Board

1.  The examination and cross-examination of a witness proceed as they would in a trial

127

under the Federal Rules of Evidence, except that Rule 103 (Rulings on Evidence) does not apply.  After putting the witness under oath or affirmation, the officer must record the testimony by audio, audiovisual, or stenographic means.  Testimony must be recorded by the officer personally, or by a person acting in the presence and under direction of the officer.

2.  An objection at the time of the examination -- whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the testimony, or any aspect of the testimony -- must be noted on the record, but the examination still proceeds; testimony is taken subject to any such objection.

3.  An objection must be stated concisely in a non-argumentative and non-suggestive manner.  Counsel must not make objections or statements that suggest an answer to a witness.  Objections should be limited to a single word or term.  Examples of objections that would be properly stated are:  "Objection, form"; "Objection, hearsay"; "Objection, relevance"; and "Objection, foundation."  Examples of objections that would not be proper are:  "Objection, I don't understand the question"; "Objection, vague"; "Objection, take your time answering the question"; and "Objection, look at the document before you answer."  An objecting party must give a clear and concise explanation of an objection if requested by the party taking the testimony or the objection is waived.

128

4.  Counsel may instruct a witness not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the Board, or to present a motion to terminate or limit the testimony.

5.  Unless otherwise agreed by the parties or ordered by the Board, the testimony is limited in duration to the times set forth in 37 C.F.R. § 42.53(c).  The Board may allow additional time if needed to examine the witness fairly or if the witness, another person, or any other circumstance impedes or delays the examination.

6.  Once the cross-examination of  a witness has commenced, and until cross-examination of the witness has concluded, counsel offering the witness on direct examination shall not:  (a) consult or confer with the witness regarding the substance of the witness' testimony already given, or anticipated to be given, except for the purpose of conferring on whether to assert a privilege against testifying or on how to comply with a Board order; or (b) suggest to the witness the manner in which any questions should be answered.

7.  An attorney for a witness shall not initiate a private conference with the witness or call for a break in the proceedings while a question is pending, except for the purpose of determining whether a privilege should be asserted.

129

8.  The Board may impose an appropriate sanction -- including the reasonable expenses and attorneys' fees incurred by any party -- on a person who impedes, delays, or frustrates the fair examination of the witness.

9.  At any time during the testimony, the witness or a party may move to terminate or limit the testimony on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the witness or party.  The witness or party must promptly initiate a conference call with the Board to discuss the proposed motion.  37 C.F.R. § 42.20(b).  If the objecting witness or party so demands, the testimony must be suspended for the time necessary to obtain a ruling from the Board, except as the Board may otherwise order.

130